STATE OF MINNESOTA, *ex rel.* St. Paul, Minneapolis & Manitoba Railway Company, *vs.* DISTRICT COURT FOR HENNEPIN COUNTY.

| 42 | 247 |
| 43 | 526 |

December 26, 1889.

**Laying out Highway across Railway—Compensation—Cattle-Guards —Sign-boards.**—Upon the laying out of a public highway across the track and right of way of a railroad company, the latter is not entitled to compensation for providing and maintaining cattle-guards and sign-boards at the new crossing.

**Same—Planking Roadway.**—It is entitled to compensation for planking the roadway where it crosses the railroad tracks, and for the maintenance of the planking.

*Certiorari* to the district court for Hennepin county, to review an order by *Lochren,* J., in proceedings for laying out a street across the relator's railway in the city of Minneapolis.

*Benton & Roberts,* for relator.

*Robert D. Russell,* for respondent.

DICKINSON, J.   The writ of *certiorari* has been resorted to for the purpose of bringing here for review the action of the district court, upon an appeal by the relator to that court, in proceedings for laying out a street across the right of way of the relator, the railroad company, within the corporate limits of the city of Minneapolis.   The objection urged by the relator, and upon which the action of the district court was based, was that the damages awarded by the commissioners were inadequate.   In fact no damages were awarded.   The taking in question was of a strip 60 feet wide, for the purposes of a public street, across the right of way of the relator.   At the request of the railway company, the commissioners made, in connection with their report to the court, special findings to the effect that it would cost: (1) For planking the railway crossing for the width of 32 feet, $92.20; (2) for renewing and maintaining the same, $250; (3) for cattle-guards across the railroad, $211.98; (4) for renewing and maintaining the same, the interest at 6 per cent. on $500; (5) for signs at crossing, $4.19; (6) for renewal and maintenance of the

same, $7. The district court, deeming that the *first*, *third*, and *fifth* of these items were allowable, made its order to the effect that the sum of those three items be awarded to the relator, and that in other respects the report of the commissioners be confirmed.

The motion on the part of the respondent to quash this writ is denied. Granting that the court was not authorized to thus fix the amount recoverable by the relator, but, by the requirements of the city charter, it should have recommitted the matter to the same or to other commissioners, it is enough, to entitle the relator to this remedy, that the court did, upon the report of the commissioners, determine that the relator was entitled to receive the sum of the three items above referred to, $308.37, and no more, and made its order accordingly, confirming the report of the commissioners with this modification. This was a final determination of the matter, concluding the parties so long as that order should remain in force.

The relator contends that, upon the report of the commissioners, it was entitled to have awarded to it as compensation not only the sums therein specified as the cost of planking, cattle-guards, and sign-boards, but also the further sums named for the maintenance of the same. The city of Minneapolis, which is the real party in interest opposed to the relator, claims that none of these items should be allowed.

It should be conceded that the relator, in acquiring its right of way, whether by purchase directly, or by statutory proceedings under the power of eminent domain, acquired property rights which are protected from divestiture by the constitutional guaranty which declares that private property shall not be taken for public use without just compensation. *State* v. *Chicago, Mil. & St. Paul Ry. Co.*, 36 Minn. 402, (31 N. W. Rep. 365,) and authorities hereafter cited. Compensation must be allowed for whatever is to be regarded as a taking of the property of the corporation for other uses. We are now called upon to determine whether, in view of the duty imposed by general statutes upon railroad companies to provide and maintain planking, cattle-guards, and sign-boards at all highway crossings, the establishing of this highway over the relator's right of way entitles it to compensation for the expense thus imposed; or, in other

words, whether, in view of the fact that this statutory duty as respects this particular locality did not exist until this highway was laid out over the relator's road, and only by reason of its having been so laid out, it should be considered that the obligation to provide and maintain this plank crossing, these cattle-guards, and this sign-board constitutes a taking of the property of the railroad company, or deprives the company of any right of property before belonging to it.

For the present we will confine our attention to the cattle-guards and sign-board. The necessity for these arises from the dangerous nature of the use of the railroad property; and it cannot now be questioned that, as a matter of mere police regulation, the state has the power to impose upon railroad companies the duty of maintaining these safeguards. There can be no doubt that, if no such requirement had ever been embraced in our general laws or in the charters of railroad corporations, and if all our railroads had been constructed without such devices for lessening the dangers incident to railroad operations, it would be within the police power of the legislature to require all railroad companies to provide such safeguards at all existing railway crossings. It has been decided in this court that the police power of the state authorized such requirements as to the construction of cattle-guards and fences. *Gillam* v. *Sioux City & St. Paul R. Co.*, 26 Minn. 268, (3 N. W. Rep. 353;) *Winona & St. Peter R. Co.* v. *Waldron*, 11 Minn. 392, (515.) It is but an exercise of the everywhere recognized police power of the state, regulating by reasonable and necessary means the use of instrumentalities otherwise attended with obvious and great danger to the public. No other principle is involved in such requirements than is involved in imposing a reasonable limitation upon the speed of railway trains at street crossings, and within the limits of thickly populated municipal districts, or in requiring a bell to be rung or whistle blown at highway crossings, or the stoppage of trains at railway crossings, and in other like provisions which are found in the statutes of every state. Such statutory regulation of the use of property does not constitute a taking of the property, or its destruction. It is only the exercise of the power of the state to reasonably control the use of property and the conduct of the individual, so far as may be necessary for the

public safety; and to such control every citizen and owner of property must submit without compensation.

If the legislature, then, could constitutionally, and without providing for compensation, have imposed this duty in the case supposed, after the railroad had been constructed and put in operation, by enacting a law requiring railroad companies to construct cattle-guards across their right of way, and to erect sign-boards to notify travellers of the existence of the railroad crossing, it will be found difficult to assign a reason in support of the relator's claim for compensation in this case. Although this street was not in existence when the railroad was constructed, and hence the requirement of the general law did not impose the duty of putting in cattle-guards and sign-boards at this place at that time, yet, as soon as the street was laid out and opened, the already existing law became applicable, and required these things to be done. But this was an exercise of the police power, as in the case before supposed. The circumstances with reference to which the general police regulation, embodied in the general law, had been framed, have now come to exist in respect to this particular locality, and the requirements of that law have become operative. There was no implied contract between the state and this corporation, when it became incorporated, that it should only be required to put in and maintain these safeguards at the crossings of streets then laid out, or at such as might be laid out prior to the construction of the railroad. The fact that not until after the construction of the railroad has the situation at this place come to be such as to require any protection from the dangers incident to railroad operation has very little bearing upon the case, if, as we think is self-evident, the statutory requirement to which the corporation is subjected is merely a reasonable police regulation of its business, and not a taking or destruction of its property. When the railroad company accepted its charter, it received its franchises subject to the authority and power of the state to impose such reasonable regulations concerning the use, in matters affecting the common safety, of its dangerous enginery, and not merely subject to the then existing regulations as applicable to then existing conditions; and whether the obligation now in question had been imposed at this

time by direct act of the legislature, or, as is the case, arises from the laying out of a new highway, to which the previously existing law becomes applicable, can make no difference.

The fallacy involved in the claim of the relator, and, as we think, in some decisions by which its claim is supported, arises from a failure to distinguish between rights of property, which confessedly are protected under the constitution from being divested or appropriated to other purposes without compensation, and the very different matter concerning the manner in which the owner may use his property, so as not to unnecessarily endanger the public. The claim of the relator involves an assumption that when the railroad constructed its line of road, conforming to the requirements of the law as to all then existing highway crossings, it had a constitutional right, by virtue of its priority, to always afterwards operate its road unembarrassed by being required to observe like precautions with respect to highways that might be thereafter laid out across the railroad, except upon the condition that it should receive compensation, not merely for whatever of its acquired property might be taken for the other use, but also for the expense and burden of conforming its own conduct to the newly-existing conditions,—of conforming to a general police regulation of the state, not before applicable. There was no such exclusive or superior right acquired by priority of charter, or of the construction of this railroad highway. It cannot be supposed that, when its franchises were granted to this relator to construct and operate this railroad, it was contemplated, either by it or by the state, that no more public highways should be laid out which should increase the number of places where the ordinary police regulations would have to be complied with by the railroad company to its inconvenience and expense. On the contrary, it must have been understood and contemplated, especially in a new state rapidly advancing in population and in the development of its resources, where new towns were springing up, and new avenues for travel and traffic were becoming necessary, that new streets and roads would be and must be laid out, and that many of these would necessarily cross existing railroad lines. We cannot resist the conclusion that, so far as concerns the matter now under consideration, the charter of the relator was taken subject

to the right of the state to impose this duty whenever, by reason of the establishing of new highways, it should become necessary; and hence the relator is not entitled to compensation for obedience to this requirement. *Lake Shore, etc., Ry. Co.* v. *Cincinnati, etc., Ry. Co.,* 30 Ohio St. 604; *Chicago & Alton R. Co.* v. *Joliet, etc., R. Co.,* 105 Ill. 388, 400, 404; *City of Hannibal* v. *Hannibal & St. Joseph R. Co.,* 49 Mo. 480; *City of Bridgeport* v. *New York & New Haven R. Co.,* 36 Conn. 255.

We have not failed to consider the decisions in *Old Colony R. Co.* v. *County of Plymouth,* 14 Gray, 155; *Mass. Cent. R. Co.* v. *Boston, C. & F. R. Co.,* 121 Mass. 124; *Chicago & Grand Trunk Ry. Co.* v. *Hough,* 61 Mich. 507, (28 N. W. Rep. 532;) *Central R. Co.* v. *Bayonne,* 51 N. J. Law, 428, (17 Atl. Rep. 971,)—to which we have before alluded as supporting the claim of the relator. It will be observed that in Massachusetts, while compensation is allowed to the railroad company for planking cattle-guards and sign-boards, it is denied for the expense of causing a bell to be rung at a new highway crossing; and that compensation is also refused for the expense of a flagman, rendered necessary at a street crossing by reason of the obstructions caused by a new railroad, crossing, by an overhead bridge, a previously established railroad. The reasons which may be sufficient to exclude the right of compensation for the necessary expense, if it be an additional expense, of ringing a bell or keeping a flagman at a crossing, would seem to be applicable also as respects cattle-guards and sign-boards. We discover no distinction in principle.

As to the planking between the rails, where the street crosses the railroad, it seems to us that a distinction exists which should affect the conclusion. The planking has little if anything, to do with the operation or safety of railway trains. The railway having been properly and lawfully constructed, the planking becomes a proper, and perhaps reasonably necessary, incident of the construction of the highway across the existing railroad. Independent of statutory regulation of the subject, it would have been the appropriate duty of the public authorities opening such a highway to make this necessary provision for the convenience of travellers on the highway, thus overcoming an obstruction to travel which lawfully

existed upon the relator's property, and which could not be removed. This might be deemed a part of the work of constructing the highway, and making it fit for travel.   But while the legislature, as may have been expedient in view of the peculiar uses to which the railway track is subjected, has required the railroad company, which necessarily has the general control of its own track, in all cases to provide and maintain the planking, that does not determine the question of compensation.   If, as has been suggested, the planking is to be deemed a part of the new highway, the railroad company cannot be required to construct and maintain it over its own right of way without compensation.   *Ill. Cent. R. Co.* v. *City of Bloomington,* 76 Ill. 447; *City of Erie* v. *Erie Canal Co.,* 59 Pa. St. 174.   As respects this subject, we see no reason why the decisions above cited as supporting the relator's contention should not be followed.   We therefore think that the railroad company was entitled to compensation for the expense of providing and of maintaining the planking.   There can be no distinction in this respect between the original construction and the subsequent maintenance, and so the authorities above cited affirm.   The law requires the railroad company to maintain the planking, and it must be assumed now, when damages are being assessed once for all, that this requirement of the law will remain unchanged.

The charter of the city of Minneapolis by which this proceeding is regulated provides that "the award or assessment of such commissioners shall be final, unless set aside by the court for good cause shown.   In case such report is set aside, the court may, in its discretion, recommit the same to the same commissioners, or appoint a new board, as it shall deem best."   We think that the report of the commissioners in this case would not justify the court in determining the question of the amount of damages upon the bare statement of the cost of putting down and of maintaining the planking. Whether there are any other considerations which could bear upon this matter, we do not know.   This report should not be treated like the special verdict of a jury, upon which judgment may be rendered, for the law contemplates an award by the commissioners.

The order of the court, dated on the 13th day of October, 1888, determining the amount which the relator is entitled to as compensa-

tion for this taking, is reversed, and the cause remanded, that the matter in controversy may be, by the proper order of the district court, committed again to commissioners, as prescribed by the statute.