STATE ex rel. CITY OF DULUTH v. NORTHERN PACIFIC RAILWAY
COMPANY.[1]

June 29, 1906.

Nos. 14,836—(197).

**Railway—Street Crossings.**

State v. St. Paul, M. & M. Ry. Co., supra, page 380, and State v. Minnesota Transfer Ry. Co., 80 Minn. 108, to the effect (1) that the obligation to construct and maintain in suitable repair for public use safe crossings at streets and highways laid out over a railroad right of way after the construction of the road rests on the railroad company, and (2) that contracts with municipalities, by which the company is relieved from that obligation and the municipality deprived of the right of enforcing it as a police regulation, are ultra vires and void, followed and applied.

Appeal by defendant from a judgment of the district court for St. Louis county, entered pursuant to the findings and order of Cant, J. Affirmed.

*C. W. Bunn, Emerson Hadley, J. L. Washburn,* and *W. D. Bailey,* for appellant.

*Bert Fesler,* for respondent.

BROWN, J.

Proceedings instituted by the city of Duluth to compel appellant, the Northern Pacific Railway Company, to repair and thereafter maintain in suitable condition for public use a viaduct now existing over its tracks at Lake avenue in that city. Judgment was ordered and entered against the company, awarding the relief demanded, from which it appealed.

1. The material facts, so far as the obligation of appellant to keep and maintain the viaduct in repair is concerned, are substantially like those presented in the case of State v. St. Paul, M. & M. Ry. Co., supra, page 380, 108 N. W. 261. The Lake Superior & Mississippi Railroad Company, a corporation, laid its tracks upon the land over which the viaduct in question now extends in 1869.

[1] Reported in 108 N. W. 269.

Thereafter Lake avenue was laid out and established over and across its right of way, and at all times since has been used continuously as one of the principal thoroughfares of the city of Duluth. In 1892 travel upon the same had so increased that it became necessary in order to render the street safe for public use to construct a viaduct thereon over the tracks and right of way of the railroad company. Prior to that date the St. Paul & Duluth Railway Company had succeeded to all the rights and liabilities of the Lake Superior & Mississippi Company, and was operating its cars and trains over the tracks so crossing that street. The city demanded of the company that it construct and maintain a viaduct or bridge over its tracks at this point, but it refused to comply with the demand, insisting that it was not legally bound to do so. Subsequent negotiations resulted in a contract between the city and the company by which the former undertook to, and did, construct the viaduct, in conformity with plans and specifications agreed upon between the parties, and by which contract the company agreed to, and did, pay toward the expense of the same the sum of $50,000; the balance, $23,000, being paid by the city. It was further provided that the city should, after the construction of the viaduct, forever maintain and keep in repair the approaches thereto, and for the period of fifteen years keep in repair that portion which extends over the railroad right of way. The latter portion of the structure being out of repair at the time of and before the commencement of this proceeding, the city repudiated the contract and demanded of appellant, successor of the St. Paul & Duluth Company, that it make the same at its own cost and expense. This proceeding was brought to enforce compliance with that demand.

The principal question involved is whether appellant is under legal duty and obligation to keep the viaduct in repair. It is insisted that, because of the fact that the street in question was established subsequent to the construction of the railroad, the railway company is under no statutory or common-law duty to make the crossing safe, and that it cannot be required to do so without compensation. The case in this respect is substantially similar to the Minneapolis case above referred to, and we apply the decision there made, and hold,

for reasons stated in that opinion, that the obligation to maintain the viaduct in repair rests upon the railway company.

2. It is further contended that the contract under which the viaduct was constructed, and by which the city agreed forever to keep in repair the approaches, and that portion thereof over the tracks for the period of fifteen years, is a valid binding contract and relieves appellant, even conceding that the obligation otherwise rests upon it. We are unable to distinguish the case from State v. Minnesota Transfer Ry. Co., 80 Minn. 108, 83 N. W. 32, 50 L. R. A. 656, and Chicago, B. & Q. R. Co. v. Nebraska, 170 U. S. 57, 18 Sup. Ct. 513, 42 L. Ed. 948. By the terms of the contract, the city attempted forever to divest itself of the right to enforce appropriate police regulations in respect to the care and maintenance of the viaduct, and the case comes clearly within the general rule that contracts of that character are ultra vires and void. The obligation to construct and maintain the approaches to this viaduct rested upon the railway company, and it could have been required to build the same, as well as that portion extending over its right of way. State v. St. Paul, M. & M. Ry. Co., 35 Minn. 131, 28 N. W. 3, 59 Am. 313. And the city, if the contract be valid, has deprived the public of the right to enforce that obligation against the company.

We were impressed on the oral argument that the viaduct in question, about one thousand feet in length, could not have been wholly imposed upon the company, and that it therefore might fairly be said that the contract involved matters within the authority of the city and could be sustained. But the findings of the court below dispose of the question adversely to the company. The court expressly found that the viaduct was built at the lowest practicable height over the tracks of the railroad company, and that the approaches thereto are as steep, and the viaduct as a whole as short, as it was safe to make them. These findings are not challenged, and are not overcome by the amendment added thereto by the trial court subsequent to filing the original decision, by which the dimensions of the different parts of the structure are given. And as suggested, within the decision in the Minneapolis case, which we here apply, the company could have been required to build the entire structure, approaches and all, and it was beyond the power of the city to assume the burden,

or forever to relieve the company from its obligations in this respect.

Of course, contracts with municipalities ought to be enforced as contracts between individuals are enforced, but the authorities are uniform that a municipal corporation cannot contract away the right of the public to enforce proper police regulations. All attempts to do so have been held void by the courts. It is true that a controversy existed between the parties in the case at bar respecting the rights and obligations of each, but the company parted with nothing it could not have been required to part with; and there was no consideration for the engagement of the city to keep and maintain the viaduct in repair. Within the authorities, the contract cannot be sustained. City v. Chicago, 66 Iowa, 422, 23 N. W. 905; Shortle v. Terre Haute, 131 Ind. 338, 30 N. E. 1084; New York & N. E. R. Co. v. Bristol, 151 U. S. 556, 14 Sup. Ct. 437, 38 L. Ed. 269; Macon v. Mayor, 112 Ga. 782, 38 S. E. 60; Elliott, R. & S. § 807; 20 Am. & Eng. Enc. (2d Ed.) 1159.

Judgment affirmed.