## CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY v. CITY OF MINNEAPOLIS.[1]

October 27, 1911.

Nos. 17,128—(224[2]—14[3]).

**Bridge over street crossing.**

The rule that a railway company may be required to erect and maintain a bridge to carry its tracks over a street crossing extends to all cases where the public safety, convenience, or welfare require such bridge.

**Bridge over artificial waterway.**

A waterway, with walks on each side, duly established by public authority for public use, connecting navigable lakes and public grounds, as to the principles applicable thereto, is not distinguishable, either by the fact that it is artificial or by the fact that it is in part a waterway, from a natural waterway or from a landway.

**Condemnation proceedings — expense of bridge.**

The rule applicable to crossings of streets and railroads applies to the crossing of a public canal and a railroad, and in proceedings to condemn a right of way for a public canal across a railway right of way, through an embankment, the company is not entitled to be awarded, as damages, the necessary expense of building a bridge to carry its tracks over the canal.

Plaintiff and defendant submitted their controversy to the district court for Hennepin county upon an agreed statement of facts, the substance of which will be found in the opinion. The matter was heard by Hale, J., who, as conclusion of law, ordered judgment in favor of plaintiff for $2,554, and found that plaintiff was not entitled to recover any part of the cost of the bridge except that represented by the architectural features mentioned in the agreed statement, and was not entitled to recover anything on account of the future maintenance of the bridge. The court further found that the

[1]Reported in 133 N. W. 169.                    [3]October, 1911, term calendar.
[2]April, 1911, term calendar.

[Note]  As to railroad company's duty to construct bridges at its own expense over public drainage ditches, see note in 31 L.R.A.(N.S.) 1118.

taking of the property of plaintiff for the purposes and in the manner stated, with no other compensation than as provided in the order, did not violate, or tend to violate, section 13, article 1, of the state Constitution or any provision of section 1, amendment 14, of the Federal Constitution. From the judgment entered pursuant to the order, plaintiff appealed. Affirmed.

*F. W. Root,* for appellant.

*C. J. Rockwood* and *Daniel Fish,* City Attorney, for respondent.

SIMPSON, J.

This is an appeal from a judgment of the district court of the county of Hennepin in a controversy submitted on an agreed statement of facts, pursuant to section 4286, R. L. 1905. The stated facts are substantially as follows:

Within the corporate limits of the city of Minneapolis, the respondent herein, are three meandered lakes—Lake Calhoun, having an area of four hundred sixty acres; Lake of the Isles, having an area of one hundred seven acres; and Cedar Lake, having an area of one hundred fifty acres. Each of these lakes is adapted for use by the public for pleasure boating, ice boating, skating, and other like uses, and is actually used by the public for such purposes. The city of Minneapolis has acquired, for park and parkway purposes, all the lands constituting the shores of Lake Calhoun and Lake of the Isles, as well as a portion of the shores of Cedar Lake, also large tracts of land located near to said lakes, and such lands are used for park and parkway purposes. The city of Minneapolis has determined to construct, and is now constructing, two canals for public use, one connecting Cedar Lake with the Lake of the Isles, and one connecting the Lake of the Isles with Lake Calhoun. The construction of such canals will greatly enhance the usefulness of said lakes to the public for pleasure boating, ice boating, skating, and like purposes. Lake Calhoun and Lake of the Isles are separated by a narrow strip of land of varying width, at its narrowest point some six hundred feet wide. The natural surface of this strip of land where the canal is being constructed is about two feet above the level at which the waters are maintained in Lake of the Isles and

Lake Calhoun. There is between these two lakes a small natural watercourse in which water flows from Lake of the Isles to Lake Calhoun.

The appellant railway company is the owner of a right of way, a strip of land one hundred feet in width, extending lengthwise along and near the center of the land between Lake Calhoun and Lake of the Isles. Along this right of way the appellant, long before any steps were taken by the respondent city to construct the proposed improvement, had constructed an embankment, which, at the point where the canal will intersect it, is about sixteen feet in height above the surface of the ground, and about eighteen feet in height above the established surface level of the water in the lakes and in the proposed canal. Upon the surface of this embankment the company laid its rails, and has operated and still operates a commercial railway over and along its said right of way.

To enable it to construct the proposed improvement, consisting of a waterway or canal, with walks upon either side thereof, the city seeks to condemn and take an easement in a strip of land one hundred feet wide, extending across the right of way of the appellant. The taking of this land is for a public purpose, and the city's right to so acquire this strip is conceded by the appellant railway company for the purposes of this appeal. The location of the proposed canal at the point where it crosses the railway tracks is immediately west of the natural watercourse between Lake Calhoun and Lake of the Isles; the center line of the proposed canal being fifty-nine feet west of the point where the waters flowing in such natural course are carried through the embankment of the railway company in a pipe about three feet in diameter. The canal, when constructed, will take the place of, and permit the closing of, this natural channel.

The construction and maintenance of the waterway and walks through the embankment of the railway company will necessitate the construction of a bridge to carry the railway tracks over the same. The agreed value of the strip of land one hundred feet wide taken from the appellant for the public way is $10, and the cost of the construction of an adequate bridge over the canal and walks is $15,969. To such cost of the bridge is added, for purely ornamental

features contained in the plans adopted by the parties hereto, the sum of $2,544. This added cost for ornamental features is assumed by the city. By further agreement of the parties, the city is authorized to take the land involved and construct the proposed improvement. The railway company is to construct the bridge as planned, waiving no claim, however, for damages or compensation to which it is entitled under the law by virtue of such taking as in condemnation proceedings, and the city is obligated to pay all such damages and compensation.

Upon trial of the matters so submitted, the court, upon the admitted facts, assessed the appellant's compensation for the taking and damaging of its property for the construction and operation of the public way in the sum of $2,554, being $10, the value of the land taken, and $2,544, the cost of the ornamental features of the bridge, and disallowed the railway company's claim for the cost of constructing an adequate bridge.

By its appeal the railway company presents for consideration and decision the question whether it is entitled to have included, in the assessment of its damages for the taking and injuring of its property for a public use, the cost of constructing a sufficient bridge made necessary by such use. The contention of the appellant is that the taking of its property for this public use, without making compensation, including not only the value of the land taken, but as well the resulting expense of the construction and maintenance of a bridge, will be a taking, destruction and damaging of private property for public use without just compensation, in violation of section 13, art. 1, Const. (Minn.) and will constitute as well a violation of the fourteenth amendment to the Constitution of the United States. This contention is based on the claim that the bridge is made necessary solely through the exercise of the right of eminent domain by the city, and that—because no question of safety of the crossing of the railway tracks and the public way is involved—the railway company cannot be required, by an exercise of the police power, to bear the uncompensated burden of building the bridge.

In considering the question thus presented there is no difficulty in

determining the nature of the way here involved, established by the city between the lakes and between the surrounding parks and parkways. Such nature clearly appears from the stated facts. Lake Calhoun and Lake of the Isles are public navigable waters, and the proposed waterway connecting them will, when established, be a public navigable waterway. Such connecting waterway will enhance the usefulness of the lakes in affording opportunity to the public for recreation and pleasure. Such waterway will thereby directly tend to promote the health, happiness, and welfare of the public. When this waterway is established, the fact that it is artificial does not distinguish it, as to the law applicable thereto, from a natural water course. Nor does it differ in nature and applicable rules from a landway. The landway, like this waterway, is artificial, laid out and established to meet the public need and promote the general welfare.

The proposed way has on each side walks, and the bridge in question in part is necessary to permit the establishment and use of these walks crossing under the tracks. By the concession of the right of the city to condemn the railway's property for this use, the reasonable necessity and convenience to the public of these footways, as well as of the waterway, is admitted for the purposes of this appeal.

Nor does the fact that the waterway and walks will be used in connection with the lakes and parkway for pleasure and recreation distinguish, as to the legal principles applicable, this way from a road or canal devoted to the movement of goods or other commercial purposes. The desirability of conserving, extending, and maintaining reasonable opportunities for wholesome public recreation is continually gaining in general recognition, because such opportunities and the use thereof concededly tend to promote the general health and welfare of the people. This court has said, speaking of inland lakes: "We are satisfied that, so long as these lakes are capable of use for boating, even for pleasure, they are navigable, within the reason and spirit of the common-law rule." Lamprey v. State, 52 Minn. 181, 53 N. W. 1139, 18 L.R.A. 670, 38 Am. St. 541. The same view is expressed by another court in the statement: "Its navigability for pleasure is as sacred in the eye of the law as its navi-

gability for any other purpose." Grand Rapids v. Powers, 89 Mich. 94, 97, 50 N. W. 661, 14 L.R.A. 498, 28 Am. St. 276.

The way sought to be established—a canal or waterway, with walks along each side—being clearly a public way, subject to the rules governing public ways, we are concerned with the nature of the property rights and duties of the railway company involved in crossings of railroads and public ways. The general principle applicable to such crossings has been determined and announced in this state and applied to one kind of crossing. The same general principle has been applied in other jurisdictions to other crossings, until the law relating to establishing and maintaining public ways and improvements across railway tracks, including the incidental questions of the resulting duty of the railway company and just compensation for its property taken or injured, seems clearly settled.

The general rule so established is that, where the safety, convenience, or welfare of the public require that a railway company carry its tracks over a public way or the public way over its tracks by a bridge, the uncompensated duty of providing such bridge devolves upon the railway company. The basis of this rule is the superior nature of the public right inherent in the reserved or police power of the state. A railroad, though constructed first in time, is constructed subject to the implied right of the state to lay out and open new highways crossing its right of way. If the operation of the railway upon a particular surface or with a particular form of support for its tracks interferes with the public safety, convenience, or welfare in the exercise of the public right to the use of such highway, then upon the railway company is placed the burden of making such necessary and reasonable readjustment of its tracks as will permit the exercise of the superior public right.

In State v. St. Paul, M. & M. Ry. Co. 98 Minn. 380, 108 N. W. 261, 28 L.R.A.(N.S.) 298, 120 Am. St. 581, and State v. Northern Pacific Ry. Co. 98 Minn. 429, 108 N. W. 269, this court announced these general principles and applied them to crossings of city streets and the tracks of railway companies, and held that where railway tracks cross a city street the uncompensated burden of constructing and maintaining a bridge to carry its tracks over the street,

115 M.—30.

or to carry the street over its tracks, is upon the railway company, if such bridge is necessary to make such crossing reasonably safe for use by the public; and this, though the railway company acquired its property and operated its road over the place involved before the street was established.

Counsel for the appellant railway company contends that the instant case on its particular facts should be distinguished from the above cases, because in this case of a waterway crossing railway tracks a grade crossing is impossible, the dangers incident to a grade crossing do not arise, and hence the uncompensated burden of building a bridge cannot be placed upon the railway company under the police powers of the state. We think this contention could be sustained only by placing an unreasonable limitation on the doctrine announced in the crossing cases, and by considering as controlling superficial facts about the proposed way rather than its conceded nature.

The opinion in State v. St. Paul, M. & M. Ry. Co., supra, discusses and affirms the right of the state in the exercise of the police power to require safety devices or bridges at crossings, so that the public using the street will not be subjected to danger. The danger in grade crossings was the particular thing in that case calling for an exercise of the police power. But it was not the announcement of the safety device rule that made this case a leading and important one in this state. The safety device rule had been announced in earlier decisions. The important rule announced in the later case is:

"A railroad company receives its charter and franchise subject to the implied right of the state to establish and open such streets and highways over and across its right of way as public convenience and necessity may from time to time require. That right on the part of the state attaches by implication of law to the franchise of the railroad company, and imposes upon it an obligation to construct and maintain at its own expense suitable crossings at new streets and highways to the same extent as required by the rules of the common law at streets and highways in existence when the railroad was constructed."

And further that: "Cases where one railroad crosses another have no application, because both stand on an equality respecting rights and obligations, while in cases like that at bar the rights of the public are superior."

The doctrine thus announced does not limit the power of the state to require railways to adapt their tracks to the use by the public of highways to cases where the use of the highway as laid out and used involves danger to the public. The police power of the state is concerned with the convenience and welfare of the public, as well as its safety. Nor on principle could the general doctrine so announced be limited to streets and highways, as distinguished from other necessary public improvements crossing the company's right of way. In State v. District Court for Hennepin County, 42 Minn. 247, 44 N. W. 7, 7 L.R.A. 121, a distinction is made between necessary planking and safety devices at street crossings. Such distinction, as was pointed out in State v. St. Paul, M. & M. Ry. Co., above, is not recognized by the authorities sustaining and applying the broad rule announced in the later Minnesota case. These authorities do not limit the application of the rule to the requirement of safety devices.

In Cincinnati v. City, 170 Ind. 316, 83 N. E. 503, the court passed upon the question of the compensation to which the railway company was entitled in condemnation proceedings instituted by the city to open a street across the railroad right of way. The tracks of the railway company were on an embankment fifteen feet above the natural surface of the ground. The proposed street extended across the right of way below the tracks through this embankment, thus making necessary a bridge to carry the tracks over the street. No compensation was allowed to cover the cost of the erection and maintenance of this bridge. It is apparent that in the Indiana case the dangers of a grade crossing were in no way involved. The only street proposed passed under the railway tracks. In denying the claim of the railway company for such compensation, it is stated: "Appellant's counsel overlook the fact that there are two distinct principles of law that operate upon the question we have under consideration, namely, 'eminent domain,' which implies a taking by the

sovereign for some public benefit, and the 'police power,' which implies a regulation by the sovereign of private property for the preservation of the public safety, health, and general welfare."

This case being taken to the United States Supreme Court, the decision of the state court was affirmed in this language: "The question as to the right of the railway company to be reimbursed for any moneys necessarily expended in constructing the bridge in question is, we think, concluded by former decisions of this court. * * * The railway company accepted its franchise from the state, subject necessarily to the condition that it would conform at its own expense to any regulations, not arbitrary in their character, as to the opening or use of streets, which had for their object the safety of the public, or the promotion of the public convenience, and which might, from time to time, be established by the municipality, when proceeding under legislative authority, within whose limits the company's business was conducted. This court has said that 'the power, whether called police, governmental, or legislative, exists in each state, by appropriate enactments not forbidden by its own Constitution or by the Constitution of the United States, to regulate the relative rights and duties of all persons and corporations within its jurisdiction, and therefore to provide for the public convenience and the public good.' " Cincinnati I. & W. Ry. Co. v. City of Connersville, 218 U. S. 336, 31 Sup. Ct. 93, 54 L. ed. 1060.

Under this rule as applied in the Indiana case—and this is clearly the same rule as that announced in this state in State v. St. Paul, M. & M. Ry. Co. supra—if the city of Minneapolis were opening a street under the tracks and through the embankment of the appellant railway company, the company would not be entitled to compensation for the necessary bridge. It is clear that no distinction in law exists between such supposed improvement and the one actually proposed to be made. Each is a public way opened below the tracks through the embankment of the railway company, making necessary a bridge to support the tracks. It would be no more possible for the railway company to reconstruct its railway across such a street without a bridge than it is to carry its railway over

the proposed canal without a bridge. No property right of the railway company can be interfered with by the removal of its supporting embankment for a waterway that is not interfered with to the same extent by the removal of the embankment for a landway.

Even the superficial facts concerning the two ways differ little. The proposed way here involved has two walks under the tracks through the embankment, the reasonable necessity of which is conceded. These walks make necessary a bridge. The fact that the public has determined that it will be better served by a portion of the way being water instead of land, cannot, on any legal principle, shift the burden of a required bridge from the railway company to the public. The railway company is not vested with a property right that can discriminate between public travel passing under its tracks on wheels and in boats. The superficial differences could be further lessened by assuming that a driveway had been laid out along the canal crossing the right of way, or that a waterway was extended to each side of the right of way with a portage beneath the tracks.

Nor is the general rule requiring railway companies to adjust their tracks to public improvements when the public convenience or welfare requires limited in its application to traveled ways. In Chicago, B. & Q. Ry. Co. v. Illinois, 200 U. S. 561, 26 Sup. Ct. 341, 50 L. ed. 596, was involved the question of the right to compel a railway company to enlarge a bridge, without compensation, to permit the passage down a natural waterway of waters collected by a system of drainage. The railway company had for years, at a point where its tracks cross a creek, maintained a suitable culvert sufficient to allow the passage of the waters naturally flowing in the creek. Drainage commissioners, having determined to drain a large district into and through the creek in order to reclaim and make tillable wet lands, notified the railway company to enlarge and widen the culvert through its right of way. The company refused to comply with this requirement unless compensated for the expense incurred. The court, in holding that the company might be required to construct the abutments and bridge, without compensation, stated:

"The learned counsel for the railway company seem to think that the adjudications relating to the police power of the state to protect the public health, the public morals, and the public safety are not applicable, in principle, to cases where the police power is exerted for the general well-being of the community, apart from any question of the public health, the public morals, or the public safety. Hence, he presses the thought that the petition in this case does not, in words, suggest that the drainage in question has anything to do with the health of the drainage district, but only avers that the system of drainage adopted by the commissioners will reclaim the lands of the district, and make them tillable or fit for cultivation. We cannot assent to the view expressed by counsel. We hold that the police power of a state embraces regulations designed to promote the public convenience or the general prosperity, as well as regulations designed to promote the public health, the public morals, or the public safety. * * * If the injury complained of is only incidental to the legitimate exercise of governmental powers for the public good, then there is no taking of property for the public use, and a right to compensation, on account of such injury, does not attach under the Constitution. Such is the present case."

In Chicago v. Luddington, (Ind.), 91 N. E. 939, it is held that the rule applicable to highways is also applicable to public ditches established across the right of way of a railway company, and that compensation need not be made to the railway company to cover the cost of a bridge made necessary to carry its tracks over the ditch. In Chicago, B. & Q. R. Co. v. Board of Supervisors (8th Circuit) 182 Fed. 291, 104 C. C. A. 573, 31 L.R.A.(N.S.) 1117, it is held: "In proceedings to condemn right of way for a public drainage ditch across a railroad the company is not entitled to be awarded as damages the expense of building a new bridge over the ditch, but its damages are confined to the value of the easement across its right of way, regardless of whether or not the ditch follows a natural watercourse over its right of way."

In West Chicago v. People, 214 Ill. 9, 73 N. E. 393, 201 U. S. 506, 26 Sup. Ct. 518, 50 L. ed. 845, and in Union Bridge Co. v. United States, 204 U. S. 364, 27 Sup. Ct. 367, 51 L. ed. 523, the

duty of a railway company to adapt, without compensation, its tracks to changes made in navigable streams is affirmed. In the latter case this language is adopted: "The duty of a railroad to restore a stream or highway which is crossed by the line of its road is a continuing duty; and if, by the increase of population or other causes, the crossing becomes inadequate to meet the new and altered conditions of the country, it is the duty of the railroad to make such alterations as will meet the present needs of the public."

In New Orleans Gaslight Co. v. Drainage Commission of New Orleans, 197 U. S. 453, 25 Sup. Ct. 471, 49 L. ed. 831, another application was made of the same general rule. A gas company had laid its pipes in the streets of the city, under a franchise, at the place indicated by the public authorities. Afterwards the city established a drainage system, the construction of which required a change in the location of the gas pipes. It was held that the company property was not taken or injured by the requirement of such change for the reason assigned, among others: "When it located its pipes it was at the risk that they might be, at some future time, disturbed, when the state might require for a necessary public use that changes in location be made. * * * In complying with this requirement at its own expense, none of the property of the gas company has been taken, and the injury sustained is *damnum absque injuria.*"

It appears from these cases—and many other similar cases might be referred to—that the principle announced by this court in State v. St. Paul, M. & M. Ry. Co., supra, while there applied to the requirement of a safety device at a street and railway crossing, is not limited either to the requirement of safety devices or to crossings of streets and railway tracks, but is broadly applicable to public improvements crossing the railway tracks whenever, to permit such crossing, the convenience or welfare, as well as the health or safety, of the public require a reasonable readjustment by the company of the means for supporting its tracks.

Under modern conditions railway companies are pioneers in development. Railroads are constructed usually in advance of the public ways and improvements made necessary by subsequent set-

tlements. The railroad is thus first constructed making provision for existing land and waterways, but without reference to subsequent improvements. By such construction natural conditions are changed. Solid embankments may be erected across low lands, or deep cuts made through higher lands. But it is now clearly established in this state, as in most states, that the company so builds its road subject to the reserved right of the public to lay out highways, locate drains, establish or improve waterways across the company's right of way when the necessity therefor arises. For the property taken in making such improvements compensation must be made, but for the incidental expense in making reasonable changes in the method of carrying its tracks over such improvements, when public safety, health, convenience, or welfare require such change, no compensation can be claimed by the railway. Such change is required under the reserved or police power of the state.

In the instant case the railway company constructed and placed its rails on a sixteen-foot embankment along a strip of land six hundred feet wide separating two navigable lakes, confining a natural watercourse between the lakes in a pipe through such embankment. The company, by such construction, did not acquire such a property right in maintaining its tracks on the embankment that it is entitled to compensation for the cost of a necessary bridge to carry its tracks over a public way thereafter duly established across its right of way. The public right to lay out such way, though asserted subsequent in time to the construction of the road, is so far the prior and superior right that the company is required to make such reasonable readjustment of its tracks as is necessary to permit of the safe and convenient use of the public way. The requirement of such readjustment is not a taking or injuring of property, but rests on the exercise of the reserved or police power of the state. The proposed way is made up of a waterway and walks on each side. The waterway takes the place of the existing natural watercourse, and becomes, like the lakes it connects, public navigable water. A bridge to carry the railway tracks over this way is a necessary incident of its use by the public, and is required by public convenience and welfare. These facts clearly bring the instant case with-

in the general principle announced in State v. St. Paul, M. & M. Ry. Co. supra, and within the applications of that principle as repeatedly made by the authorities in the Federal and state courts.

It follows that the trial court properly refused to include in the compensation allowed the railway company the item of the cost of a bridge—exclusive of ornamental features—required to carry the tracks of the railway company over the newly established public way.

Judgment affirmed.

START, C. J. (dissenting).

I dissent. The short facts are these: Lake Calhoun and Lake of the Isles, meandered lakes within the territorial limits of the city of Minneapolis, are separated by a narrow strip of land six hundred feet in width at its narrowest point. The appellant owns a strip of land one hundred feet wide along the entire length of the strip separating the lakes, whereon it has constructed its railroad bed and embankment, which are some sixteen feet in height, and laid its track thereon. The respondent city has acquired the shores of the lakes for park purposes, and seeks to acquire, by the exercise of the power of eminent domain, the right to construct a canal and a walk on each side thereof, through a strip one hundred feet in width of such tract, to connect the waters of the lakes. This will materially enhance the public use of the lakes for pleasure and ice boating, skating, and like uses. The taking of appellant's land for the canal will, for all practical purposes, divide it into two parts, and necessitate the construction of a bridge over the canal to connect the separated parts of its land, and thereby restore its roadbed to its original condition of safety and utility. The two lakes are not connected by any natural watercourse, except that at a point fifty-nine feet east of the center line of the proposed canal, where it will cross appellant's right of way, there is a small watercourse, the waters of which, coming from Lake of the Isles, are discharged into Lake Calhoun through a pipe three feet in diameter placed under the appellant's railroad bed. When the canal

is constructed, this watercourse and pipe will be useless, and they can be closed.

The question presented by the record is whether the appellant is entitled to have included, in the assessment of its damages for the taking and damaging of its property, so taken for a public use, the necessary cost of constructing a bridge over the canal so as to connect the parts of its roadbed, divided by the canal. The contention of the city, which the court sustains, is that the appellant is not entitled to have included in its damages such cost, for the reason that public safety, convenience, and welfare require the construction of the bridge; hence in the exercise of the police power the uncompensated duty of building the bridge may be imposed upon the appellant. It must be conceded that if the bridge in this case is a necessary safety device, to protect the public from the dangers arising from railway grade crossings over public ways, the uncompensated duty of constructing and maintaining it may, in the exercise of the police power, be imposed upon the appellant. The question, however, is: Do the special facts of this case bring it within the rule stated? How can the bridge in any manner conserve the safety of the public in using the canal? There can, from the very nature of the case, be no grade crossing of a railroad and a canal. Nor can the construction of this bridge promote in any manner public convenience or welfare, for the sole necessity for and function of the bridge will be to connect the parts of the appellant's land which will be separated by the canal, and thereby restore the roadbed to its original condition of safety and utility.

The court in its opinion seem to attach much importance to the fact that there is to be a walk on each side of the canal. I am unable to understand how such fact can be regarded as specially weighty. The walks are a mere incident to the canal, and if the bridge is not essential as a safety device to the canal proper it cannot be as to the walks on each side of it.

Again, the facts of this case do not present any question of the safety of navigation, or of a natural watercourse to be widened or deepened, or of the obstruction of navigable waters, or of public drainage. We have simply the question whether the state may, in

the exercise of its police power, take dry land for the purpose of creating an artificial watercourse without any compensation except the mere value of the land taken. It is true that, when the right to convert such land into an artificial watercourse is once secured by the exercise of the power of eminent domain and the payment of just compensation, the waters of the artificial course become public waters and the right of public navigation thereof paramount, but not before. In the very nature of the case the doctrine of the paramount right of public navigation cannot have any application to dry land in case the state seeks to take it by the exercise of the power of eminent domain, in order to convert it into an artificial watercourse. Any attempt to assess the appellant's damages for taking its land for the creation of an artificial watercourse, on the basis of rights and benefits which will accrue to the public after it has secured the right to take the land and convert it into a canal, would violate the plainest principles of natural justice.

I am, therefore, of the opinion that the uncompensated duty of constructing the bridge here in question cannot, upon the particular facts of this case, be imposed upon the appellant in the exercise of the police power of the state, and that the cost of the bridge ought to have been included in its damages. In reaching this conclusion I am not unmindful of the fact that the police power is an essential and beneficent attribute of sovereignty, the exercise of which, pursuant to valid legislative authority, cannot be controlled by the courts. But when, as is too often the case, such power is invoked to justify the confiscation of private property for public use in violation of constitutional guaranties, the courts may and must interfere for the protection of the citizens' constitutional rights. The police power cannot be used as a mask for removing private property from the protection of the Constitution.