STATE ex rel. VILLAGE OF CLARA CITY v. GREAT NORTHERN RAILWAY COMPANY and Another.[1]

July 23, 1915.

Nos. 19,365—(239).

**Railway — construction of street crossings.**

1. The legislature, vested with the police power of the state, may require a railroad company to make the street crossings over its right of way reasonably safe and convenient for pedestrians.

**Same — construction of sidewalk — act valid.**

2. Chapter 78, Laws of 1913,[2] making it a duty of every railroad company, wherever its right of way crosses a public street in a municipality, to construct a suitable sidewalk to connect with and correspond to the walks constructed and installed by the municipality or by the owners of abutting property, is a valid exercise of the police power of the state, and is not to be construed as a disguised attempt to levy a local assessment or tax.

---

[1] Reported in 153 N. W. 879.    [2] [G. S. 1913, § 4256].

Upon the relation of the village of Clara City the district court for Chippewa county granted its alternative writ of mandamus directing the Great Northern Railway Co. and the Willmar & Sioux Falls Railway Co. to build the sidewalk mentioned in the opinion or show cause why they had not done so. From an order, Qvale, J., sustaining the demurrer to the complaint, relator appealed. Reversed.

*Fosnes & Fosnes,* for appellant.

*M. L. Countryman* and *T. R. Benton,* for respondent.

BUNN, J.

The village of Clara City, in Chippewa county, petitioned the district court for a writ of *mandamus* commanding respondents to build and maintain a sidewalk on the south side of Bunde street across the right of way of respondents and to connect with sidewalks on the street on both sides of the right of way. A temporary writ was issued and served. Respondents demurred to the petition, the demurrer was sustained, and the relator appealed to this court.

The right of way of the railroad companies is 300 feet in width where it is crossed by Bunde street. There are three tracks, all approximately in the middle of the right of way. The station of defendant is immediately north of Bunde street, which is one of the principal streets in the village, and the only street that crosses the right of way. There are business houses on both sides of the right of way, and it is necessary for people doing business in the village to cross the right of way several times a day. The petition alleges that the sidewalk as ordered built by the village council is very essential. It was admitted for the purposes of the demurrer that the part of the street occupied by the roadbed or tracks of the railway companies was and is properly, securely and sufficiently planked the full width of the street, the planking extending the full length of the ties and between the tracks as required by statute, and that the sole object and purpose sought to be attained by these proceedings is to compel the companies to construct a sidewalk on one side of the street across the entire right of way, so that the sidewalk will connect with the said planking in either direction, but not so as to in-

130 M.—31.

clude in such construction the building of any sidewalk or cross-walk along that part of the street now occupied by the roadbed or tracks, which part is already sufficiently and securely planked for crossing purposes.

The village relies for its right to compel the construction of the sidewalk upon Laws 1913, p. 65, chapter 78, which amends R. L. 1905, § 1995, prescribing the duty of railroad companies to construct and maintain grades and planking at street crossings between tracks, by adding after the requirement that planking shall be placed between all tracks that are not more than 15 feet apart, this language: "And a suitable sidewalk shall be constructed by said company to connect with and correspond to said walks constructed and installed by the municipality or by owners of abutting property, but cement or concrete construction shall not be required in track space actually occupied by the railroad ties if some substantial and suitable sidewalk material is used in lieu thereof."

A sidewalk is generally regarded as a local improvement, and where a municipality is given authority in the premises it may assess abutting or benefited property for the cost of construction. If such be the only view to be taken of the sidewalk which, by this proceeding, the defendants are to be required to construct, then the court below rightly sustained the demurrer. For it is the settled law of this state, as evidenced by numerous decisions, that the statutes providing for a gross earnings tax by railway companies exempt the property of such company that is used for railroad purposes, not only from all general or ordinary taxes, but from all local, special or extraordinary assessments or charges. First Division St. P. & Pac. R. Co. v. City of St. Paul, 21 Minn. 526; City of St. Paul v. St. Paul & S. C. R. Co. 23 Minn. 469; Patterson v. Chicago, R. I. & P. Ry. Co. 99 Minn. 454, 109 N. W. 993.

But we think a sidewalk over the right of way of a railroad where it crosses a public street in a village or city may be considered from another point of view. The state, in the exercise of its police power, may, for the safety, convenience and welfare of the public, require a railroad to maintain its right of way over a street in a reasonably safe condition. Even at common law the burden was cast

upon the railroad to maintain that part of the public highway occupied by its tracks and right of way in a proper condition for travel. The syllabus in State v. Minnesota Transfer Ry. Co. 80 Minn. 108, 83 N. W. 32, 50 L.R.A. 656, is: "At common law the duty rests upon a railway corporation, when it occupies a public thoroughfare with its tracks, to restore the same, by some reasonably safe and convenient means, to its former condition of usefulness. And the duty is a continuing one, and the way must be kept in repair by the corporation whose act has made the duty necessary." In Chicago & Northwestern Ry. Co. v. Chicago, 140 Ill. 309, 29 N. E. 1109, the question was: Whether or not in condemning for a street over a railroad right of way, the expense of constructing and maintaining the street crossing was part of the amount for which compensation was to be awarded the railroad, the statute of Illinois placing the burden upon the railroad to construct and maintain crossings and approaches thereto within its right of way "so that at all times they should be safe as to persons and property." The court said: "Government owes to its citizens the duty of providing and preserving safe and convenient highways. From this duty results the right of public control over public highways. Railroads are public highways * * * Every railroad takes its right of way subject to the right of the public to extend the public highways and streets across such right of way * * * If railroads so far as they are public highways are, like other highways, subject to legislative supervision, then railroad companies in their relation to highways and streets which intersect their rights of way, are subject to the control of the police power of the state. * * * It is proper that the portion of the street or highway which is within the limits of the railroad right of way should be constructed by the railroad company and maintained by it, because of the dangers attending the operation of its road. It should control the making and repairing of the crossing for the protection of those passing along the street and of those riding on the cars. * * * The items of expense, for which appellant claims compensation, are such only as are involved in its compliance with a police regulation of the statute. * * * Uncompensated obedi-- ence to a regulation enacted for the public safety under the police

power of the state is not a taking or damaging without just compensation of private property." The Federal Supreme Court, after quoting the above, and more, from the cited Illinois decision, in Chicago, B. & Q. Ry. Co. v. Chicago, 166 U. S. 226, 17 Sup. Ct. 581, 41 L. ed. 979, adds: "We concur in these views. The expenses that will be incurred by the railroad company in erecting gates, planking the crossing, and maintaining flagmen, in order that its road may be safely operated—if all that should be required—necessarily result from the maintenance of a public highway, under legislative sanction, and must be deemed to have been taken by the company into account when it accepted the privileges and franchises granted by the state. Such expenses must be regarded as incidental to the exercise of the police powers of the state."

It is now settled that a municipality is impliedly clothed with the police power of the state to the extent that where the necessity exists, it may compel a railroad corporation at its own expense to carry the street or highway over or under its right of way and maintain the highway in a fit condition for travel. This may include paving and sidewalk, at least so far as the right of way extends (State v. Northern Pac. Ry. Co. 98 Minn. 429, 108 N. W. 269), and on the second appeal 99 Minn. 280, 109 N. W. 238, 110 N. W. 975. See also State v. St. Paul, M. & M. Ry. Co. 98 Minn. 380, 108 N. W. 261, 28 L.R.A.(N.S.) 298, 120 Am. St. 581, 8 Ann. Cas. 1047, and Chicago, M. & St. Paul Ry. Co. v. City of Minneapolis, 115 Minn. 460, 133 N. W. 169, 51 L.R.A.(N.S.) 236, Ann. Cas. 1912D, 1029, and the opinions affirming these cases in the Federal Supreme Court in 208 U. S. 583, 28 Sup. Ct. 341, 52 L. ed. 630, 214 U. S. 497, 29 Sup. Ct. 698, 53 L. ed. 1060, and 232 U. S. 430, 34 Sup. Ct. 400, 85 L. ed. 671. These decisions clearly indicate that the burden of maintaining a reasonably safe and convenient crossing where a street or highway crosses a railroad's right of way is upon the railroad, although such burden, in particular instances, may be exceedingly onerous. It would seem to follow that what may be reasonably incident to this burden, in the way of regulation, is for that authority to prescribe which is exercising the police power of the state.

In the matter of regulation we think that within the tenor of the cited decisions, and others upon the subject, not only the safety, but, to some extent, the convenience of the travelers upon the highway may be considered and served, in fact convenience conduces to safety. Reasonable requirements may properly make distinctions between the manner of constructing and maintaining highway crossings over railroad rights of way in the country, in the village, and in the large city. Another reasonable provision would seem to be that the maintenance of the highway or street over the railroad right of way ought to correspond somewhat to the manner in which the highway or street is maintained as it joins or approaches the right of way.

It goes without saying that in the legislature is vested the police power of the state in its fullest amplitude. It is also clear that the statute (section 1995, R. L. 1905), of which chapter 78, p. 65, of the Laws of 1913 is an amendment, was enacted, in virtue of this police power of the state, to safeguard and facilitate public travel. Unless the statute as amended clearly exceeds this power it should be sustained.

The statute insofar as it requires planking does rightfully, we think, impose an uncompensated burden upon the railroads. The decision to the contrary in State v. District Court for Hennepin County, 42 Minn. 247, 44 N. W. 7, 7 L.R.A. 121, is virtually overruled by the one in State v. St. Paul, M. & M. Ry. Co. 98 Minn. 380, 108 N. W. 261, 28 L.R.A.(N.S.) 298, 120 Am. St. 581, 8 Ann. Cas. 1047. See also Chicago, B. & Q. Ry. Co. v. Chicago, 166 U. S. 226, 17 Sup. Ct. 581, 41 L. ed. 979, and Chicago, M. & St. P. Ry. Co. v. Milwaukee, 97 Wis. 418, 72 N. W. 1118. If planking a public highway, where the same crosses the tracks of a railroad, may be so connected with public safety and convenience that under the police power of the state the railroad company may be compelled to do it without expense to the public, it would seem to follow that a statute which requires a performance of this duty, burdensome though it be, cannot be said to impose a tax or assessment upon the company.

There can be no controlling difference between the requirement of sidewalk and of planking. Planking is, to be sure, more to

prevent persons in vehicles from injury or the vehicles or teams from damage by being stalled on the crossing. But where a crossing is much traveled, safety, to say nothing of convenience, may require a separate space, like a sidewalk, reserved for pedestrians. There is a peculiar peril to travelers on foot where many vehicles pass and the attention of the drivers is diverted to looking out for trains liable to use the crossing. Again, unless a well defined walk be provided, there is danger of pedestrians crossing the tracks at places unexpected to those in charge of trains or cars, not to mention the inconvenience where mud and impassable conditions compel those on foot to deviate from the street proper.

It is said the defendant, if obligated to lay a sidewalk across its right of way, might likewise be required to construct sidewalks along such right of way where it borders a highway or street. The sufficient answer is that the statute does not call for anything of the kind.

The contention is also that defendant has so much larger right of way than it needs or occupies for its three tracks that for the greater distance the sidewalk, as a safety provision, is out of place. It is to be assumed that the right of way is such only as is needed for and devoted to railway purposes and such as is rightfully exempt from taxes and assessments because of the payment of the gross earnings tax. Within its right of way defendant may, at any time, place additional tracks or change the location of those it maintains, and, for that reason, it also seems proper that the safety of the passage for the traveler for the whole distance should be placed upon the railroad company. The statute merely prescribes that it shall maintain a sidewalk over its legitimate right of way to correspond and connect with the walk maintained under the supervision of the municipality so as to afford the pedestrians a reasonably safe and convenient crossing. This regulation does not appear to us to be an unreasonable or arbitrary exercise of the police power of the state. Nor do we consider the same to be a disguised attempt to levy a local assessment. The amendment of 1913 is designed to provide for the pedestrians a safe and convenient passage along the streets

of the municipalities where such streets are occupied and crossed by the tracks and right of way of a railroad company.

This opinion expresses the views of all the members of the court except the writer, who, while readily admitting that a sidewalk across the right of way is a convenience, if not a necessity, is not able to see how it is made so by defendant's ownership or use of the right of way. My own view is that the statute in question is not a valid exercise of the police power.

Order reversed.