VILLAGE OF WAYZATA v. GREAT NORTHERN RAILWAY COMPANY.[1]

February 3, 1897.

Nos. 10,057—(26).

**Res Judicata—Identity of Issues.**

The conclusive character of a judgment extends only to identical issues, and they must be such not merely in name, but in fact and in substance. If the vital issue of the latter litigation has been in truth already determined by an earlier judgment, it may not again be contested, but if it has not,—if it is intrinsically and substantially an entirely different issue, even though capable of being described in similar language, or by a common form of expression,—then the truth is not excluded, and the judgment is no answer to the different issue.

**Same.**

*Held*, that the finding of fact made by the trial court, in substance that the defendant's plea of a previous adjudication of the subject of the present action had been proven and established, is not supported by the evidence.

**Railway along Highway—Necessity.**

Under a law which authorizes a railroad company to construct its road along and over any public or private way, if it shall "be necessary," a practical, and not an absolute, necessity is intended; and the burden of proof would be upon the company to show this practical necessity, if questioned when originally locating the line.

**Same.**

The necessity upon which the company acted when first establishing the line and when building the road is presumed to be continuous, and to exist, in proceedings instituted to compel a change of the track and its appurtenances.

**Same—Burden of Proof.**

In such proceedings the burden of proof is upon the party demanding a change of the line, as constructed and used, to show, by clear and convincing testimony, not only that the original necessity no longer exists, but that there are substantial reasons for holding that the public interests demand that a change be made. Testimony which would warrant a court, on a hearing to locate a line, in finding that the public interests required it to be located elsewhere than upon a particular public or private way, would not uphold a like finding where the proceeding was to change and remove a line already constructed and in operation.

[1] Reported in 69 N. W. 1073.

67 M.—25

Finding Sustained.

*Held,* in a proceeding to compel defendant railway company to remove its tracks and appurtenances from a certain street in plaintiff village, and to locate them elsewhere, that a finding to the effect that a more practical, feasible, and convenient route for such tracks and appurtenances, or one which would less interfere with the safety and convenience of the public, or afford less obstruction to the public ways in said village, than the one now occupied, could not be found, is sustained by the evidence.

Appeal by plaintiff from an order of the district court for Hennepin county, Elliott, J., denying a motion for a new trial. Affirmed.

*Welch, Hayne & Conlin,* for appellant.

The decision in the former action was based on the fact that it was necessary to make connection with lake traffic at that point on Lake street, and that the defendant then maintained and used these facilities for connection with such traffic. The issue in the present action is whether defendant has a right to occupy this street when it has removed all those facilities for such connection. Whether the doctrine of res judicata applies in a given case is determined by whether the evidence necessary to support or contradict the issue involved in the former decision is the same and sufficient to support or contradict the issue in the subsequent case. West v. Hennessey, 58 Minn. 133, 59 N. W. 984; Marsh v. Masterton, 101 N. Y. 407, 5 N. E. 59; 21 Am. & Eng. Enc. Law, 233; Palmer v. Hussey, 87 N. Y. 303; Cromwell v. County of Sac, 94 U. S. 351; Betts v. Starr, 5 Conn. 553; Belden v. State, 103 N. Y. 1, 8 N. E. 363.

*W. E. Dodge,* for respondent.

The cause of action in the first and second suits is identical. Cromwell v. County of Sac, 94 U. S. 351; Thompson v. Myrick, 24 Minn. 4; Harris v. Harris, 36 Barb. 88; State of Wisconsin v. Torinus, 28 Minn. 175, 9 N. W. 725; Gage v. Holmes, 12 Gray, 428; Dwyer v. Goran, 29 Iowa, 126; Bazille v. Murray, 40 Minn. 48, 41 N. W. 238; Steinbach v. Relief F. I. Co., 77 N. Y. 498; Hobby v. Bunch, 83 Ga. 1, 10 S. E. 113.

COLLINS, J.[2] This action was brought to enjoin and prohibit defendant railway company from keeping and maintaining its double

[2] Buck, J., took no part in this case.

tracks and telegraph poles on Lake street, in plaintiff village, and, as a consequence, to compel the removal of said tracks and poles from said street, where they now are. It is, in the main, a renewal of the controversy which formerly existed between these parties, and was supposed to have been terminated in an action which was determined in this court in 1892. Village of Wayzata v. Great Northern Ry. Co., 50 Minn. 438, 52 N. W. 913.

The right of the defendant at that time to keep and maintain said double tracks and telegraph poles on said Lake street, upon the performance of certain conditions, which involved a slight change in the location of the tracks, the removal of side tracks and other obstructions from the street, the making and maintaining of public crossings at certain points, and also making provision for suitable and convenient access to the water, was distinctly affirmed in that action. From the evidence herein, it is shown that, immediately upon the entry of final judgment in that case, defendant not only removed its side tracks and other obstructions from the street, as required to do, but it also removed its wharves and steamboat landings and its station and depot buildings from the village limits; establishing a new station and new wharves about one mile east of the old, and also locating a flag station for some trains at a point west about one-fourth of a mile. It left nothing whatsoever in the street, or within the limits of the village, except its tracks and the telegraph poles. These it has maintained along Lake street, running daily a large number of trains through the street at a rate of speed varying from 20 to 30 miles an hour.

That the village and its people have been and are seriously injured and damaged by the removal of the station, and the running of trains in the middle of the street at this rate of speed, cannot be doubted, but these facts do not control the case now before us. It was brought upon the ground that as the necessity for depot facilities upon Lake street, and at the point where the depot buildings then stood, had been obviated and removed by the action of defendant in taking away its depot buildings and its adjacent wharves and landings, the necessity for maintaining its tracks and poles in the street had ceased. As both were a very serious injury and detriment to the use by the people of the water front, the good of the public, it was alleged, imperatively demanded their removal to

the north, and to a route through the village which, while equally as feasible for defendant, would interfere much less with a proper use of the water front by the inhabitants of the village. And in the answer, and upon the trial, defendant contended, among other things, that the whole subject-matter of the present litigation had been fully and finally determined by the judgment entered in the former action, and was not open for discussion or decision, no matter what new conditions had arisen. On findings of fact (two in number), the court below ordered judgment in defendant's favor, and this appeal is from an order denying plaintiff's motion for a new trial.

These findings were, in substance: First, that there was "no more" practical, feasible, or convenient route for defendant's tracks and telegraph poles into and through the village, or one which would less interfere with the safety and convenience of the public, or afford less obstruction to the public streets and highways in the village, than that already occupied; second, that each and every allegation of fact, as set forth in the answer in defendant's plea of previous adjudication of the subject of the present litigation, had been proven and established on the trial, each and all of said allegations being incorporated into the finding.

By the assignments of error it is asserted that neither of these findings is supported by the evidence, and that the court erred in its conclusion of law based thereon. These findings are wholly disconnected and independent, so that it is not necessary, in order to sustain the conclusion of law, that both should be supported by the proofs. One refers solely to the practicability, feasibility, and convenience of a route through the village, and, upon the evidence, determines that no other route would interfere less with the safety and convenience of the people than the one now pursued, or afford less obstruction to the public streets and highways of the village, while the other pertains solely to the plea of res judicata found in the answer, and set up as a complete bar to the cause of action. So that, if the second finding was justified by the proofs, the conclusion of law was correct, and no further consideration of this appeal would be required. In such case the first finding would become immaterial. If, upon the other hand, the evidence failed to sustain the plea in bar, no conclusion of law ordering judgment for defendant wholly predicated upon the second finding could be sanctioned.

We quite agree with counsel for plaintiff in their claim that the second finding was not warranted by the proofs submitted in support of the plea of former adjudication. The "issues in the other action involved the right of defendant to maintain its tracks and adjuncts thereto, including station buildings, side tracks, and telegraph poles, on the streets of the village, as it then did, and had for many years, the complaint alleging that the right did not exist. The answer averred the existence of the right originating by virtue of an act of the territorial legislature conferring the right, if it should be necessary, and then alleged that it was necessary for the purpose of directly connecting the traffic by rail with the traffic by water, and that the necessity remained. The court, upon the trial, found that the legislative act gave the right to defendant's predecessor; that the right was duly exercised and acted upon; that it was necessary that the railway approach the lake so as to make direct connection with it in carrying passengers and freight to be carried on both the lake and the railway; that, in order to make this connection, it was necessary to make it at the point on Lake street where it was made, and then pass over and along the street; and, further, "that the same condition of things and the same necessity has ever since existed and still exists."

At that time the defendant maintained a station with a passenger and freight depot at the village. It also maintained, in close proximity to the depot, wharves, and landings for boats plying upon the lake, thus affording facilities for joint traffic on the lake and by rail. It connected this traffic at this particular point, and by these facilities; and, to do this, the necessity for the occupation of Lake street by its tracks first arose, had since existed, and continued to exist at the time of the trial of the former action. It was these conditions, continuing and existing at the time of the trial, which largely influenced the court when making the finding from which we have quoted, and it is evident that this finding was quite potent in the final determination of the case. As made, the finding was upon the facts as they then existed. The conclusion of law, in so far as it was rested on this finding, was an application of legal principles to the facts as found, not to others which might arise in the future and be presented for adjudication.

And, from the pleadings and the proofs in the present action, it is undisputed that an entirely different condition of things exists, and that a radical change has been made in the situation by the act of defendant after the final judgment was entered in the former action. The mandate of the court was obeyed to the letter, it is claimed; and, in addition to this, the defendant went further, and removed all of its station buildings, and abandoned its station. It not only removed the obstruction which it was commanded to·remove, but also took away its facilities for connecting the rail traffic with that upon the lake. With the wholesale removal and absolute abandonment of all connection with the lake traffic, and the establishment of a new station and other connecting facilities at another point, there can be no pretense that there now remains the same necessity as that which formerly existed. Under such circumstances, the issues presented in this case are not identical with those before the court in the former action.

The test to be applied is whether the same evidence will sustain both the former and the present action. If a party alleges a certain state of facts as his cause of action, and is defeated, it is no bar to recovery on another statement of facts constituting a different cause of action, although the transaction referred to and the relief sought in both actions are the same. West v. Hennessey, 58 Minn. 133, 59 N. W. 984.

"The conclusive character of a judgment extends only to identical issues, and they must be such not merely in name, but in fact and substance. If the vital issue of the later litigation has been in truth already determined by an earlier judgment, it may not again be contested; but, if it has not,—if it is intrinsically and substantially an entirely different issue, even though capable of being described in similar language, or by a common form of expression,—then the truth is not excluded, and the judgment no answer to the different issue." Palmer v. Hussey, 87 N. Y. 303, 306.

On the facts as they were shown to exist at the time of the trial of the present action, the plaintiff, instead of seeking to contradict and overturn the former judgment, claimed the benefit of and relied upon it.

As the second finding of fact was unsupported by the evidence, we now turn to a consideration of the claim that the first finding is without evidence to sustain it. The only testimony received on the

trial in reference to the matters covered by the first finding was that offered by the plaintiff, through two witnesses,—one the president of the village council, the other a civil engineer.

The former testified as to the great inconvenience in reaching the water's edge from the village, the buildings therein being north of the double tracks, and also the hazard and danger in using Lake street, the principal business thoroughfare, for the passage of teams, with many trains running thereon at a high rate of speed, and at all hours. That it clearly appeared from this evidence that the safety and convenience of the public, and its right to free access to a navigable body of water, had been greatly interfered with and obstructed by the operation of defendant's trains, cannot be doubted.

The engineer testified as to the feasibility of another route for defendant's railway through the village, by changing the line of road for something more than one mile, and produced a map of his proposed route, made from an actual survey. If this plan were adopted, the tracks through the village would be transferred from Lake street to a line nearly parallel with the street, about 300 feet northerly, and through the center of the three blocks which abut on Lake street. See plat, 50 Minn. 441, 52 N. W. 913. The new line would be about 150 feet longer than the old. From the map produced by the engineer, it seems that for about 400 feet the new route would be upon a county road, and would then cross four streets which intersect Lake avenue at right angles south of the proposed crossings. After testifying as to the length of the proposed route, the curves, the depth of cuts and height of fills which would have to be made, the engineer was permitted to give his opinion (defendant's counsel objecting) that there was no physical necessity, by reason of the condition or surface of the ground in that vicinity, for the retention and maintenance of defendant's tracks upon Lake street.

There was no evidence as to how this change would affect the operation of defendant's road as a whole, or the convenience of the traveling public, or the rights of property holders along the new route, or the property over which it would have to pass. There was no testimony as to what expense the defendant might incur should it attempt to change its line, or how serious the change might be to the inhabitants of the village residing north of the proposed line. It seems to have been assumed by the plaintiff that because the

tracks and poles are now, as the tracks are used, an obstruction to free and convenient access to the lake, and a great impediment to those who would navigate its waters, they would be little or no obstruction or inconvenience to the people of the village if placed elsewhere, where, as a matter of fact, the inconvenience and obstruction in some other way, or to inhabitants who have no desire or occasion to visit the lake, might be much greater and more serious. It seems also to have been assumed that there would be less hazard and risk to the traveling public if trains running at a high rate of speed were driven out from behind buildings situated upon the blocks we have referred to, and directly across streets, than there would be if these trains ran along a street where they could be seen at a much greater distance, and a better opportunity afforded to avoid them. In fact, had the court below attempted to find that the proposed route would interfere less with the safety and convenience of the public, or afford less obstruction to the public streets and highways, except, perhaps, in respect to the means of access to the lake shore, the finding would have been without evidence to support it.

When examining the proofs on which the finding now in question was founded, it must be borne in mind that this was a proceeding to compel the removal of defendant's line from where it had been located and operated for many years, and not a proceeding involving an original location. The statute which authorized the occupation of the street in the first instance, and under which defendant's predecessor acted more than 25 years ago, conferred the right to construct a road upon, along, and over any public or private highway, "if the same shall be necessary." [3] By providing that a public or private way might be occupied if "necessary," the territorial legislature meant a practical, and not an absolute, necessity. As stated in Buck v. Seymour, 46 Conn. 156:

"Property was to be regarded as 'necessary' for the operation of the road if it was such as the company, in the reasonable exercise of its discretion, considered it best to procure for the most profitable use of the road to itself, and the most beneficial use of it to the public."

And when exercising the right to appropriate the way, and to construct the railway line along and upon it, the burden of proof must

[3] Laws 1857, Ex. S. c. 1, § 7.

be upon the corporation to show the necessity. If shown, and the road is built, the necessity must be presumed to be continuous and to exist until, in a proper proceeding, it is overcome by clear and convincing evidence.

So in this case the plaintiff was not only met with the presumption, but it was also confronted with the former adjudication,—a bar to further proceedings unless it was shown that the conditions on which the adjudication was based had wholly changed. Realizing this, plaintiff introduced evidence to establish its contention that these conditions had changed, and also that it was no longer necessary that defendant should occupy Lake street, and, further, that public rights required a removal of the tracks to another locality. It admitted—what is undoubtedly true—that the burden of proof was upon it to show, not only that the necessity no longer existed, but that there were substantial grounds for a finding of the court that a more feasible, practicable, and convenient route could be obtained, and that the safety and convenience of the public demanded a change in the line at this particular point, and also that the proposed change would less obstruct the streets and highways of the village than the line in use.

Not only was the burden upon plaintiff in these respects, but a finding in its favor upon so important a matter would have to be based upon clear and convincing testimony. Evidence which would warrant a court, on a hearing to locate a railway line in the first instance, in finding that the public interests required it to be elsewhere located than upon some particular private or public way, would not necessarily uphold a like finding when the proceeding was to change and remove a line already constructed and in operation. If the rule we have announced was not the true one, every railroad company could be compelled to alter an established route at the caprice of a local public, as often as demanded, and almost without regard to the original decision upon the question of necessity, the interest of the general public, or the cost of alteration. Companies would be continually harassed by reason of changed conditions, and upon the ground that local necessities arising subsequent to the original location absolutely demanded alteration here and there in the general system and plan of the entire line.

Taking into consideration the character of the evidence received

in support of plaintiff's contention, of which a synopsis has already been given, and measuring it by the rule which must certainly govern in cases where a change in the location of railway tracks and appurtenances is demanded, in connection with the entire situation and circumstances, we cannot indorse the contention of plaintiff's counsel that the only finding which could have been made upon the evidence, and the only conclusion of law to follow, should have been in direct opposition to those presented for review.

Order affirmed.