STATE ex rel. CITY OF ST. PAUL v. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY.[1]

February 14, 1902.

Nos. 12,834—(195).

**Eminent Domain—Title to Land Acquired.**

When an appeal is taken from the award of the commissioners in condemnation proceedings by a railway company to secure a right of way, and judgment is finally entered for damages to the owner, and

[1] Reported in 89 N. W. 1.

granting the land to the company, the title to the property thus acquired dates from the date of the filing of the award.

## Possession by Railway—Subsequent Plat of Adjoining Land.

Where a railroad company took possession of the right of way and constructed its tracks thereon pending such proceedings, and thereafter the owner of the adjoining property platted the land, and lots, blocks, and streets were laid out and described with reference to such right of way and tracks, and a street was laid out across the same, *held*, the filing of such plat did not, by dedication or otherwise, affect such right of way. *Held*, also, that the railroad company did not waive its priority of right in such right of way by the purchase of additional grounds for the widening of its right of way, described in the deed of conveyance according to such plat.

## Same—Bridge Contract.

When such railroad company constructed a bridge over its tracks and right of way so acquired, in pursuance of an agreement with the public authorities that in consideration thereof the city would build the approaches and thereafter maintain the bridge, and such contract was carried out, and the bridge was maintained by the city for many years, held, the railroad company could not be required to waive the contract, and repair and maintain the structure.

Alternative writ of mandamus issued out of the district court for Ramsey county on relation of the city of St. Paul, requiring defendant railway company to repair the bridge over its tracks at Edgerton street in said city, or to show cause to the contrary. The case was tried before Bunn, J., who denied a peremptory writ and directed that the alternative writ be discharged. From an order denying a motion for a new trial, relator appealed. Affirmed.

*James E. Markham* and *Thomas McDermott*, for relator.

*Thomas Wilson*, for respondent.

LEWIS, J.

In 1869 the St. Paul, Stillwater & Taylor's Falls Railroad Company was incorporated to build a railroad from St. Paul to Stillwater, and in 1871 commenced proceedings of condemnation to acquire a right of way one hundred feet in width through the land in question, and during the same year the roadbed was graded

and the track laid. Commissioners were duly appointed to assess damages to the property condemned, and on September 18, 1871, they filed their report and award, from which the owner appealed to the district court, wherefrom it was subsequently removed to the United States circuit court, where on June 29, 1876, judgment was duly rendered in favor of the owner for damages, and granting to the railroad company its right of way, and on September 15, 1877, the judgment was paid. In 1872 the then owner of the property platted the same, dedicating to the public the Edgerton street involved in this case. In 1880 the defendant railway company succeeded to all interests, rights, and property, real and personal, of the St. Paul, Stillwater & Taylor's Falls Railroad Company, and in 1886 commenced condemnation proceedings to acquire certain property for the purpose of widening its right of way through a portion of the land described in such plat; but the proceedings were dropped, and the land was acquired by deed dated July 27, 1886. This additional territory was taken possession of by defendant, who occupied it with its tracks, extending them across Edgerton street for a considerable distance beyond the first acquired right of way of one hundred feet; and in the year 1887–1888 defendant built a bridge on Edgerton street, over and across its grounds and railroad, under the following agreement and understanding with relator: That if defendant would build the bridge proper, according to plans and specifications prepared by relator, the city would build the approaches thereto, and thereafter maintain and keep it in repair at its own expense.

Relator commenced this proceeding to compel the defendant company to repair the roadway and sidewalks of the bridge. Judgment was entered in defendant's favor, and relator appealed to this court upon various propositions, of which the following are essential to consider: Does the title in defendant company to the one hundred-foot strip of right of way date from the filing of the award by the commissioners in 1871? Did the filing of the plat in 1872 by the then owner of the land, and the subsequent acquisition of the additional right of way, have the effect of dedicating to the public the street in question, so that whatever rights the railroad company may have acquired by such condemnation proceedings be-

came subject thereto? If the right acquired by defendant under the original condemnation proceedings was prior to that acquired by the public in the street by virtue of the aforesaid plat, then may the city repudiate the contract under which the bridge was constructed, and require the defendant company to maintain it over the original one hundred feet? If the city is bound by the contract, and cannot require defendant to maintain or repair the bridge over the one hundred feet first acquired, what are the relative rights and powers of the relator and defendant company with reference to that part of the bridge constructed over defendant's right of way and tracks outside of the first one hundred feet?

1. The trial court found that the condemnation proceedings commenced in 1871 to secure the original right of way were in all respects regular and in accordance with the statutes then in force, and the finding is supported by the evidence. From the evidence and finding of the court it appears that defendant's predecessor built its railway track upon the primary right of way strip through Stinson's property in 1871, which was one year prior to the filing of the plat and consequent dedication to the public of Edgerton street. And although the award was appealed from by the owner, the cause removed to the United States court, and the final award not paid until some years later, yet the title to this original one hundred feet related back to, and dated from, the filing of the commissioners' award, September 18, 1871. Upon principle and authority, the taking occurred at that date. Whitacre v. St. Paul & S. C. R. Co., 24 Minn. 311.

2. The filing of the plat in 1872 did not have the effect of dedicating to the public a street across defendant's theretofore acquired right of way. The railroad tracks were then upon the ground, and defendant's predecessor in actual possession, all of which was recognized by the owner, for the streets, blocks, and lots were laid out accordingly; and relator acquired no rights in the streets except by virtue of the plat. The city was not a necessary party to the condemnation proceedings, because it held no interest in the premises when they were commenced, and the mere fact that the plat was filed pending those proceedings did not

entitle it to be made a party. Whatever rights were granted by the plat were subject to existing conditions, and the grantee of the owner could have no greater right by virtue of a conveyance or dedication than the owner himself had. Defendant is not estopped from denying the existence of the street across the one hundred-foot strip from the fact that in 1886 it purchased property which was described in the deed according to the plat; for while bound by the plat, so far as it affected the purchase made with reference to it, there is no possible ground for an argument that defendant waived its title and prior right to that strip of land by such subsequent purchase. While true that the plat does not show this strip extending across Edgerton street, the defendant was not in any way connected with or bound by the plat; nor could such representations affect the previous owner, who was in actual possession; hence every element of estoppel is lacking.

3. It is claimed by appellant that the court's finding regarding the construction of the bridge under an agreement with the city is not supported by the evidence, and that error was committed in receiving certain testimony bearing upon the nature of the contract and its adoption by the city. The view we take of this case renders it unnecessary to determine whether error was committed as assigned, or whether the city ever legally entered into such a contract. The record and findings show conclusively that the bridge was constructed in pursuance of an understanding between defendant and the city's representatives that relator would maintain and keep it in repair, and relator makes no material claim that defendant voluntarily and of its own motion built this bridge, regardless of the city's proposition thereafter to maintain it.

It is immaterial whether the action taken by relator with reference to the construction and maintenance of the bridge was legal or not. We are only concerned with the obligations and responsibilities assumed by defendant at the time it entered into such an arrangement and constructed the bridge. The proposition is simply this: It being conceded that the defendant company could not be compelled to build a bridge over its original one hundred

feet, the mere fact that it did so at the request and inducement of relator could in no way take from defendant those rights in the street which it originally held. To state it in another way: If the city was at that time unable to oblige the defendant to bridge over its original right of way, yet it was within the power of the common council to enter into a contract with defendant to secure the desired bridge; and if such contract was actually entered into, lawfully or unlawfully on relator's part, thereby inducing defendant to proceed and build the bridge, which it could not otherwise have been forced to do, then the relator will not be heard to say that it did not have the power to do that which it in fact accomplished. The question of the city's rights and powers here involved is entirely different from one that would arise in a case where the public had a priority of right in a street. The conclusion inevitably follows, therefore, that, so far as the original right of way is concerned, defendant waived nothing because of its action in constructing the bridge, and the city gained nothing, even conceding that it did not legally enter into the contract. And if defendant's right of priority has not been waived by carrying the contract into effect, then the city has now no greater power to compel defendant either to build or maintain a bridge over its original right of way than it had before the agreement was entered into and carried out.

4. There is no specific finding that any part of defendant's tracks occupied the right of way beyond the one hundred feet first procured, and this proposition is not expressly raised in the petition; but it appears from the evidence and the plats that at the time the bridge was built, and since, defendant has continuously occupied a right of way beyond the one hundred feet. Conceding that relator is entitled to raise the question, we will consider whether defendant is in any way obligated to repair or maintain that part of the bridge over its additional grounds and tracks, though the question has already been practically answered. As to the one hundred feet the city had no rights, and could obtain the bridge only by reason of the contract. If relator needed a bridge at that point, its only legal course, if any it had, was to condemn and acquire a public highway over defendant's right of

way, and then compel defendant to join it in the construction and consequent maintainment of a bridge. But relator did not proceed that way, and, as before stated, the city could lawfully enter into a contract such as it did. If relator is estopped from repudiating the contract as to the one hundred-foot strip, and requiring defendant to maintain that part of the structure, it is also estopped from rejecting it as to that part constructed over the additional right of way, for defendant could not have been compelled to build over its additional right of way without reference to the one hundred feet. The contract is an entirety, and must stand or fall as such. The bridge was one structure, obtained under the contract upon the one consideration, and relator cannot in part retain it, and in part repudiate it.

Judgment affirmed.