## STATE EX REL. CITY OF ST. PAUL v. GREAT NORTHERN RAILWAY COMPANY AND ANOTHER.[1]

July 28, 1916.

Nos. 19,895—(253).

**Bridge over railway tracks — duty to rebuild — mandamus.**

1. The facts established by the evidence and found by the court are sufficient to justify the issuance of a peremptory writ of *mandamus* to compel defendants to rebuild the bridge in controversy, unless the city is precluded from now asserting the existence of such facts by prior adjudications or by a contract entered into with defendant Great Northern.

**Estoppel by verdict — judgment in prior suit.**

2. The doctrine of estoppel by verdict applies only when it affirmatively appears that the identical issue sought to be litigated in the second suit has not only been actually litigated and determined in the former suit but that such determination was necessary to warrant the judgment rendered in the former suit. For a judgment to operate as an estoppel by verdict it must appear that the controlling facts presented in the second suit existed at the time of the former litigation and that the issue adjudicated in the first suit is the identical issue involved in the second suit; and it must not appear that the controlling facts

[1] Reported in 158 N. W. 972.

have changed since the former trial. Measured by this rule, the facts do not sustain defendants' contention that this action is barred by the judgment in the so-called Grove street case.

**Contract between the parties ultra vires.**

3. The city cannot divest itself of any portion of its police power, and the contract between the city and the Great Northern by which the city undertook to bind itself to maintain the bridge in controversy is void as an attempt so to do.

**Judgment pursuant to stipulation of parties void.**

4. A judgment declaring such contract valid was entered pursuant to the stipulation of the parties but without judicial action by the court. So far as it sought to confirm the contract, the stipulation is void for lack of power to make it; and the judgment based thereon is also void so far as it purports to establish the validity of the contract.

Upon the relation of the city of St. Paul the district court for Ramsey county granted its alternative writ of *mandamus,* requiring the Great Northern Railway Company and the Northern Pacific Railway Company to reconstruct a bridge on Seventh street over their railway tracks, in accordance with Ordinance No. 3493, or show cause why they had not done so. In its separate answer the Great Northern Railway Company set up the judgment entered in that court in 1899 in an action between the same relator and some of defendants, and alleged that the judgment had never been appealed, reversed or modified and was still in full force and effect. The case was tried before Michael, J., who made findings and ordered a peremptory writ to issue. From an order denying their motion for a new trial, defendants appealed. Affirmed.

*M. L. Countryman* and *Emerson Hadley,* for appellants.

*O. H. ONeill* and *J. P. Kyle,* for respondent.

TAYLOR, C.

The city of St. Paul brought this action to compel defendants to rebuild the easterly span of the bridge which carries Seventh street in that city over their tracks. The trial court made findings of fact and conclusions of law and directed the issuance of a peremptory writ of *mandamus* commanding them to rebuild the bridge as demanded. Defendants moved for a new trial and appealed from the order denying their motion.

That the facts established by the evidence and found by the court are sufficient to justify the issuance of the writ is not denied, if the city is in position to maintain the action. Defendants rest their defense upon the claim that the city is barred and estopped by a contract and by two former judgments from now asserting that the duty to rebuild the bridge rests upon the railroad companies.

In 1893 the city of St. Paul sought by *mandamus* to compel defendants and other railway companies to construct a bridge for the purpose of carrying Grove-street in that city over their tracks. In that case the court found, among other things, that the proposed bridge was to be constructed across a deep natural ravine about 600 feet in width and 50 feet in depth through which Trout Brook flows to the Mississippi river; that the sides or banks of this ravine were abrupt, "forming a precipitous and impassable gulf" across which Grove street had never been opened or used; that the tracks of the railway companies had been constructed along this ravine in and near the east bank and at a grade of about 15 feet above Trout Brook; that the need of a bridge arose "from the ravine and the nature of the ground, and was and is in no way caused by the construction and operation of said railway tracks;" and that "the construction of said bridge as proposed across said ravine along the line of Grove street, so-called, as shown on said Exhibit 18, would subserve the convenience of a large number of the citizens of said city, and owing to the natural conformation of the ground as aforesaid and the expense of securing by condemnation proceedings or otherwise the right to make the necessary slopes, if a fill were adopted, it would be necessary, and would be the least expensive and most expedient plan to secure a crossing of said ravine along said line by a bridge such as is proposed in the alternative writ. Such necessity or expediency is in no manner enhanced or affected by the occupancy of said ravine as aforesaid by defendant, but always existed and will exist on account of the reasons aforesaid, independent and without reference to said occupancy of said ravine by defendants."

Upon its findings of fact the court directed judgment for the defendants and against the city, and its decision was affirmed on appeal to this court. State v. St. Paul, M. & M. Ry. Co. 62 Minn. 450, 64 N. W. 1140. A judgment was subsequently entered discharging the alternative writ. The proposed bridge has never been constructed.

In the instant case the court found, among other things, that the bridge span in controversy is 123 feet in length and is the easterly span of the present bridge which is 365 feet in length; that the ravine in its natural state had an extreme depth of about 35 feet on the Seventh street line; that in 1860, or prior thereto, "a useable and passable road" was constructed across the ravine on this line by cutting the banks and filling in the bottom of the ravine; that Seventh street has ever since been a public thoroughfare across the ravine and the principal route of travel to and from the easterly portion of the city; that in 1862 the first railroad track was constructed in the ravine along the easterly side thereof; that Seventh street crossed this track at grade and although the city raised the embankment across the ravine in 1863 or 1864 the street continued to cross the railroad tracks at grade until the railway companies, in 1871 or 1872, raised the grade of their tracks about six feet; that, when the railway companies so raised the grade of their tracks, the city constructed a bridge 78 feet in length over such tracks, of sufficient height to give a clearance of 15 feet between the bridge and the tracks, and raised the embankment across the remainder of the ravine sufficiently to connect with the bridge; that this improvement furnished a good roadway and a comparatively easy and a practicable grade for a city street," and the street as so improved remained in constant use for more than ten years; that beginning in 1883 the railway companies removed the embankment constructed by the city and thereafter erected the present bridge and occupied the entire ravine at this crossing and have 21 railroad tracks therein, of which eight pass beneath the bridge span here in controversy, and that the city abandoned the use of an earth embankment across the ravine "only because of the total occupancy of said ravine by railway tracks, which rendered an earth embankment road impossible." The court further found as follows: "A grade crossing was not safe or practicable over this network of railway tracks. * * * The approximate cost of reconstructing this 123 foot span upon the existing piers and abutments as contemplated will be $20,000. * * * Except for the presence of said railway tracks it has at all times been, and still is feasible and practicable to extend said street across said ravine on the line of the present established grade, or any lower grade thereof, by an earth fill or embankment, which would, at

a much lower cost than a bridge, furnish a permanent and enduring roadway. * * * The total cost of grading said street to its full width across said ravine, to the present established grade, by an earth embankment, including sidewalks and paving the roadway, and including the cost of acquiring the necessary easements for slopes, would not exceed the sum of $20,000, and to so improve the 123 feet here involved would not cost to exceed $6,500. The total cost of said entire bridge, 365 feet in length, including piers and abutments is approximately $100,000. That the necessity for said bridge, and the portion of it here involved is due wholly to the presence of the railway tracks of the defendants in said ravine, and that it is the duty of the defendants to reconstruct said bridge in accordance with said plans and specifications. That the judgment roll, findings of facts, conclusions of law and judgment, in a certain action tried in this court in the year 1894, wherein the state of Minnesota on relation of the city of St. Paul was plaintiff and these defendants and others were defendants, introduced in evidence by the defendants, and involving the construction of a bridge on Grove street across said ravine, do not constitute an estoppel, or have any binding force, against the plaintiff or relator in this case."

1. Seventh street extends in a northeasterly and southwesterly direction and crosses the Trout Brook ravine at a right angle; Grove street extends in an east and west direction and crosses the ravine obliquely. Seventh street, at the westerly bank of the ravine, is 300 feet south of Grove street; but the two streets intersect at the easterly bank thereof, and the east end of the proposed Grove street bridge, if it had been constructed, would have occupied a portion of the space now occupied by the bridge span here in controversy. Defendants contend that the findings in the Grove street case, to the effect that it was not feasible or practicable to construct such an embankment across the ravine as would be required to carry Grove street thereover, and that the necessity for a bridge resulted solely from the conformation of the ground and not in any degree from the existence or operation of the railroad tracks, operates as an estoppel in the present case, and bars the city from maintaining the present action. We cannot accede to this proposition. The doctrine of estoppel by verdict applies only when it affirmatively appears that the identical issue sought to be litigated in the second suit has not only been

actually litigated and determined in the former suit, but that such determination was necessary to warrant the judgment rendered in the former suit. Irish American Bank v. Ludlum, 56 Minn. 317, 57 N. W. 927; Macomb Sewer-Pipe Co. v. Hanley, 61 Minn. 350, 63 N. W. 744; Augir v. Ryan, 63 Minn. 373, 65 N. W. 640; Neilson v. Pennsylvania, C. & O. Co. 78 Minn. 113, 80 N. W. 859; Leonard v. Schall, 132 Minn. 446, 157 N. W. 723.

"An adjudication is conclusive only as to those matters capable of being controverted between the parties at the time and as to conditions then existing and cannot operate as an estoppel to another action or proceeding which, though involving the same rights passed upon, is yet predicated upon facts which have arisen subsequent to the former adjudication." 24 Am. & Eng. Enc. 777.

In State v. Torinus, 28 Minn. 175, 9 N. W. 725, it is said that "a former adjudication never affects after acquired rights;" that "intervening events, affecting the issue, may be shown to prevent a former judgment from being conclusive;" and that "an estoppel, though admissible in a case precisely the same with that adjudged, has no application to one which is in its own nature ambulatory, and which has ceased to be the same by progression." See also Guilford v. Western Union Tel. Co. 59 Minn. 332, 61 N. W. 324, 50 Am. St. 407; Woodcock v. Carlson, 49 Minn. 536, 52 N. W. 142.

The judgment in the Grove street case simply adjudicated that the bridge there proposed was a cheaper and therefore a more feasible and practicable method of carrying Grove street across the ravine, under the conditions existing 20 years ago, than an embankment, even if there were no railroad tracks in the ravine; and that the necessity for the bridge then under consideration did not result from the existence of the railroad tracks. The findings in the present case show an entirely different state of facts. They show that the crossing at Seventh street is materially shorter and the grade materially lower than at Grove; that Seventh street was in fact carried across the ravine upon an embankment for many years; that the embankment was removed and a bridge substituted solely for the accommodation of the railroads; that the bridge can be replaced by an embankment of the same height as the bridge at less than one-quarter of what it would cost to reconstruct the bridge; that

the span in controversy can be replaced by a fill at one-third the cost of reconstructing the bridge span, although the pier and abutment are already constructed and in place; and that the sole reason why a bridge is necessary and an embankment impracticable is because the space beneath the bridge is occupied by railroad tracks. In the Grove street case the controlling element in the problem was the fact that the construction of the bridge there proposed was much cheaper than the construction of an embankment. If this element were to control in the present case, the bridge would be replaced by an embankment. Whether this changed situation results from the fact that bridges are now required to carry much heavier loads and are therefore much stronger and consequently more expensive than 20 years ago, or from the fact that an embankment can be constructed more cheaply now than then, or from the fact that the embankment required to carry Seventh street across the ravine is much smaller than would have been required to carry Grove street thereover, or from other facts disclosed or undisclosed, is not important so long as an element which was a controlling factor in the former case does not exist in the present case.

To make the judgment in the Grove street case operate as an estoppel in this case, it must appear that the controlling facts in this case existed at the time of that litigation, and that the issues there adjudicated included the identical issue or issues here involved, and it must not appear that the controlling facts have changed since the trial of that case. Village of Wayzata v. Great Northern Ry. Co. 67 Minn. 385, 69 N. W. 1073. The record discloses that the issues are not identical and that the situation has changed, and the judgment in the Grove street case is not a bar to the present proceeding. This disposes of the case so far as the Northern Pacific Railway Company is concerned, but the Great Northern Railway Company insists that the city is precluded from requiring that company to rebuild the bridge by a contract entered into between them.

2. The predecessor of the Great Northern entered into a contract with the city, which provided that, whenever the city directed that a street be carried over the tracks of the company by a bridge, the company should build the abutments for the bridge and the superstructure over its tracks, and that the city should build the approaches thereto and should maintain the bridge and keep it in repair. This contract clearly attempted to

take from the city a part of its police power and was unquestionably void. State v. Minnesota Transfer Ry. Co. 80 Minn. 108, 83 N. W. 32, 50 L.R.A. 656; State v. St. Paul, M. & M. Ry. Co. 98 Minn. 380, 108 N. W. 261, 28 L.R.A.(N.S.) 298, 120 Am. St. 581, 8 Ann. Cas. 1047; State v. Northern Pacific Ry. Co. 98 Minn. 429, 108 N. W. 269; Northern Pacific Ry. Co. v. State, 208 U. S. 583, 28 Sup. Ct. 341, 52 L. ed. 630. State v. Chicago, St. P. M. & O. Ry. Co. 85 Minn. 416, 89 N. W. 1, cited by defendant, involved a contract for constructing a bridge over the tracks of the defendant in that action at a place where no street crossed such tracks, and is not in point.

3. Defendant further contends that, even if the court should deem the contract void when taken by itself, yet its validity is conclusively established by a judgment entered in the district court of Ramsey county in what is known as the Westminster street case. The city brought an action to compel the Great Northern Railway Company, and other railway companies, to construct a bridge over their tracks at Westminster street. The case was tried but, before it was finally submitted, the city entered into a stipulation with the railway companies for judgment in favor of the companies, and expressly stipulated that the judgment should determine that the contract above mentioned was valid and binding. Judgment was entered in accordance with the stipulation. The city could no more impair its police power by the stipulation than by the original contract; and the question presented is whether the city could accomplish the purpose of establishing the validity of the contract by causing a judgment declaring it valid to be entered pursuant to such void stipulation. The judgment shows upon its face that the case had not been submitted to nor decided by the court; and that it was entered under and pursuant to such stipulation. The parties could not accomplish in this manner what they had absolutely no power to accomplish in any manner, namely, take from the city a part of its police power. This judgment was the act of the parties, not the act of the court; and whatever effect such a judgment might have upon the personal rights of parties thereto who possessed the power to make such an agreement, neither the state nor the governmental agencies of the state can be shorn of their governmental powers by any such device. 6 R. C. L. page 188, par. 189.

In Kelley v. Milan, 127 U. S. 139, 8 Sup. Ct. 1101, 32 L. ed.

77, the town of Milan had issued bonds to a railroad company which were void because issued without legislative authority therefor. The officers of the town brought an action to have the bonds canceled as void, but thereafter stipulated that the suit had been compromised and that judgment should be entered establishing the validity of the bonds. Such judgment was duly entered. The Supreme Court of the United States, after remarking that the court as a judicial tribunal had not passed upon the validity of the bonds, but that the decree rested solely upon the stipulation, say [p. 159]: "The act of the mayor, in signing that agreement, could give no validity to the bonds, if they had none at the time the agreement was made. The want of authority to issue them extended to a want of authority to declare them valid. The mayor had no such authority. The decree of the court was based solely upon the declaration of the mayor, in the agreement, that the bonds were valid; and that declaration was of no more effect than the declaration of the mayor, in the bill in chancery, that the bonds were invalid. The adjudication in the decree cannot, under the circumstances, be set up as a judicial determination of the validity of the bonds. Russell v. Place, 94 U. S. 606, 24 L. ed. 214; Manhattan Life Ins. Co. v. Broughton, 109 U. S. 121, 125, 27 L. ed. 878, 880. This was not the case of a submission to the court of a question for its decision on the merits, but it was a consent in advance to a particular decision, by a person who had no right to bind the town by such a consent, because it gave life to invalid bonds; and the authorities of the town had no more power to do so than they had to issue the bonds originally." The court distinguished the case from one where both parties had the power to make the compromise. In the instant case there was not only an absence of legislative authority for the acts of the city, but it was beyond the power of the legislature to grant any such authority. R. C. L. supra.

The order appealed from is affirmed.