# CITY OF ST. PAUL v. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY AND ANOTHER.[1]

February 8, 1918.

No. 20,738.

**Municipal corporation — police power — maintenance of bridge over railroad tracks.**

1. A city, in the exercise of its police power, may compel a railway company to construct and thereafter maintain a bridge for the purpose of carrying a street over its tracks, if a bridge is necessary to enable the public to cross such tracks safely and conveniently.

**Same — contract to part with police power invalid.**

2. The city cannot divest itself of any part of its police power by contract, or otherwise.

**Same — judgment pursuant to stipulation invalid, when.**

3. A judgment against a municipality, not rendered as the judicial act of a court but entered pursuant to a stipulation of the officers of the municipality, is void if such officers lacked power to bind the municipality.

**Same — when stipulation as to matter of law invalid.**

4. A stipulation as to a matter of law which affects public interests is not binding upon the courts.

**Same — when judgment not a bar to action to compel repairs to bridge.**

5. A stipulation that no obligation rested upon defendants to repair the bridge over their tracks here in question stated a conclusion of law, and a judgment to that effect entered pursuant thereto, without the judicial action of a court, is not a bar to a subsequent action by the

[1]Reported in 166 N. W. 335.

city to compel defendants to repair such bridge. The subject matter cannot be removed from the domain of the police power of the city by such a stipulation and judgment.

**Same — bridge not on defendant's land.**

6. There is no basis in the record for the contention that a part of the bridge was built outside the street and upon land owned by the Omaha Company.

Action in the district court for Ramsey county against two railway companies to recover $6,127.81 expended by plaintiff in rebuilding the Westminster street bridge over their tracks. The separate answers alleged that in a certain mandamus proceeding, where the issues of fact and law were determined by the court, judgment was entered upon the merits, by which it was determined that no obligation rested on the railroad companies to maintain or keep the bridge in repair. The case was tried before Haupt, J., who made findings and ordered judgment in favor of plaintiff for the amount demanded. From the judgment entered pursuant to the order for judgment, defendants appealed. Affirmed.

*J. B. Sheean, M. L. Countryman* and *Moore, Oppenheimer & Peterson,* for appellants.

*O. H. O'Neill,* for respondent.

TAYLOR, C.

In 1915 it became necessary to reconstruct the southerly span of the bridge which carries Westminster street in the city of St. Paul over the tracks of defendants, and the city passed an ordinance requiring defendants to rebuild it. They refused to do so, and thereupon the city rebuilt it and then brought this action to recover the expense incurred. The city recovered a judgment in the district court and defendants appealed.

The defendants rest their case upon the proposition that the city is estopped and barred from maintaining this action by a judgment entered in the district court on May 17, 1899.

To understand the situation a brief reference to the proceedings which resulted in that judgment is necessary. Pursuant to negotiations between officers of the city and officers of the several railway companies,

an agreement was formulated, in 1880, which provided that, whenever the city should direct that a street be carried over the tracks of railway companies within the city by a bridge, the railway companies interested should build the abutments for the bridge and the superstructure over their tracks, and that the city should build the approaches to the bridge and should maintain the bridge and keep it in repair after it was constructed. By its terms this agreement appears to apply to and include all railway companies having tracks within the city. It was signed by the St. Paul, Minneapolis & Manitoba Railway Company, the predecessor in interest of the Great Northern Railway Company. The original agreement seems to have been lost and whether it was signed by any of the other railway companies is not clear and there is no finding as to this fact. It does not appear that the city council ever authorized or directed the execution of the agreement by the city, nor that any city officer ever signed or executed it on behalf of the city. However this may be, the city and the railway companies, or a part of them, proceeded to act under the agreement. In 1881, the city notified defendants to build a bridge over their tracks on Westminster street, and defendants, apparently acting under the agreement, built the bridge now in controversy and completed it in 1882. Thereafter the city maintained the bridge and kept it in repair until 1898. In 1898, the city brought an action to compel defendants to make repairs upon the bridge then necessary. The defendants in their respective answers set forth the agreement above mentioned and asserted that by virtue thereof the duty to repair the bridge rested upon the city and not upon them. The defendants also asserted that their tracks were located in a deep ravine; that the contour of the ground made a bridge necessary irrespective of the location of the railway tracks, and that for that reason no duty rested upon them to construct or maintain a bridge except as imposed by the above agreement. The cause came on for trial and the evidence was taken, but the cause was never submitted to the court for decision. While it was still pending, the city council passed an ordinance which provided for the settlement of various contropersies with the railway companies and contained the following provision concerning this action: "The corporation attorney is hereby authorized and directed to stipulate for and procure the entry of final judgment to the effect that

no duty rests upon either or any or said railway companies to maintain or keep in repair the bridge described in said proceedings and known as the Westminster street bridge, and in and by said judgment affirming and determining that a certain contract between the city of St. Paul and the said St. Paul, Minneapolis and Manitoba Railway Company, bearing date August 23, 1880, is as to said St. Paul, Minneapolis & Manitoba Railway Company, its successors and assigns, a valid and binding contract between said city and said railway company. Said contract is in words and figures following:" The ordinance then set forth in full the above mentioned agreement. Pursuant to the ordinance the city attorney entered into a stipulation with the defendants which recited the pendency of the action, the passage of the ordinance and its acceptance by the defendants, the making of the agreement, and then continued: "And whereas, upon the evidence received upon the trial of this action, the city of St. Paul, the petitioner herein, is willing to concede that no obligation or duty rests upon either or any of the defendant companies in this proceeding to maintain or keep in repair the said Westminster street bridge, and by the terms of said ordinance has directed its corporation attorney to stipulate for and procure the entry of final judgment in favor of said railway companies, as provided in said ordinance, Now therefore, it is hereby stipulated that judgment may be ordered in favor of said St. Paul, Minneapolis & Manitoba Railway Company, said Great Northern Railway Company and said Chicago, St. Paul, Minneapolis and Omaha Railway Company, and against said petitioner, the city of St. Paul, in the form hereto annexed."

Pursuant to the stipulation and without findings of any kind, the court entered judgment, on May 17, 1899, in the form prescribed by the stipulation. This is the judgment upon which defendants rely. It declares "that no obligation or duty rests upon" either of the defendants "to maintain or keep in repair the bridge described in the pleadings in this cause and known as the Westminster street bridge in said city of St. Paul, or any part thereof." It then sets forth in full the above mentioned agreement and declares that it is valid and binding between the city and the St. Paul, Minneapolis & Manitoba Railway Company and its successors. As set forth in the judgment, the agreement is

signed only by the Manitoba Company, and the judgment does not in terms declare it valid or binding as to the Omaha Company.

It has long been settled that the city, in the exercise of its police power, may compel a railway company to construct a bridge for the purpose of carrying a street over its tracks whenever a bridge is necessary to enable the public to cross such tracks safely and conveniently, and may also compel the company to maintain the bridge thereafter and keep it in repair, and that this is a power of which the city cannot divest itself by contract or otherwise. State v. Minnesota Transfer Ry. Co. 80 Minn. 108, 83 N. W. 32, 50 L.R.A. 656; State v. St. Paul, M. & M. Ry. Co. 98 Minn. 380, 108 N. W. 261, 28 L.R.A.(N.S.) 298, 120 Am. St. 581, 8 Ann. Cas. 1047; State v. Northern Pacific Ry. Co. 98 Minn. 429, 108 N. W. 269; Northern Pacific Ry. Co. v. State, 208 U. S. 583, 28 Sup. Ct. 341, 52 L. ed. 630; State v. Chicago, M. & St. P. Ry. Co. 135 Minn. 277, 160 N. W. 773, L.R.A. 1917C, 1174.

The rule is stated in 6 R. C. L. 190, § 189, as follows: "The state cannot barter away the right to use the police power, and cannot by any contract divest itself of the power to provide for acknowledged objects of legislation falling within the domain of the police power. Accordingly the legislature cannot surrender or limit such powers either by affirmative action or by inaction, or abridge them by any grant, contract or delegation whatsoever. The discretion of the legislature cannot be parted with any more than the power itself. These principles apply to the police power delegated to municipal corporations; thus the general police power possessed by a city is a continuing power, and is one of which the city cannot divest itself, by contract or otherwise."

A judgment against a municipality, not rendered as the judicial act of a court but entered pursuant to a stipulation of the officers of the municipality, is of force and effect only so far as such officers had authority to bind the municipality. The fact that by consent of the municipal officers an agreement or stipulation made by them has been put in the form of a judgment, in an attempt to give it the force and effect of a judgment, does not cure a lack of power in the officers to make it, and if such power be lacking the judgment as well as the stipulation is void. Kelley v. Milan, 127 U. S. 139, 8 Sup. Ct. 1101, 32 L.

ed. 77; Union Bank v. Commissioners, 119 N. C. 214, 226, 25 S. E. 966;
Lawrence Mnfg. Co. v. Janesville Cotton Mills, 138 U. S. 552, 11 Sup.
Ct. 402, 34 L. ed. 1005.

This court had the agreement of 1880 and the judgment now in
question under consideration in State v. Great Northern Ry. Co. 134
Minn. 249, 158 N. W. 972, and held that the agreement was void as
an attempt to divest the city of a portion of its police power, and that
the judgment was also void insofar as it attempted to give validity to
the void agreement, or to divest the city of any part of its police power.
In the present action defendants concede the invalidity of the agree-
ment and also the invalidity of the judgment to the extent stated, but
contend that the part of the judgment which determined that no duty
or obligation rested upon them to maintain or repair the bridge is sev-
erable from the remainder of the judgment, and is valid and precludes
the city from maintaining the present action. We are unable to sustain
this contention.

Even if we were to concede that the judgment determined that, un-
der the conditions then existing, it was more feasible and practicable
to carry the street over the ravine by a bridge than by an embankment
regardless of the railway tracks, it would not preclude the city from
showing that, under present conditions, if no railway tracks crossed the
street it would be more feasible and practicable to replace the bridge, or
the portion of it in question, by an embankment than to reconstruct it
and keep it in repair. State v. Great Northern Ry. Co. 134 Minn. 249,
158 N. W. 972, and cases cited therein. The city presented evidence
tending to prove that such was the fact, and defendants offered none to
controvert it. The court made no specific finding showing that con-
ditions had changed since the former action, but found that if no rail-
way tracks extended across the street it would be feasible and practicable
to construct an embankment instead of a bridge. But passing this
point, the statement in the ordinance and in the stipulation that no
obligation or duty rested upon defendants to maintain or repair the
bridge is a pure conclusion of law not supported by any statement of
facts. The city officers did not stipulate that the character of the ra-
vine made a bridge more feasible and practicable than an embankment,
but merely that no duty to maintain or repair the bridge rested upon

the companies. So far as appears their action may have been based solely upon the supposed validity of the void agreement of 1880. But whatever may have been the inducing cause, they stipulated to a conclusion of law which if recognized and enforced will operate to curtail the police power of the city. While stipulations which affect only the individual rights of the parties thereto may be given effect, stipulations in respect to matters of law, especially if they affect public interests, are not binding upon and will be disregarded by the courts. 20 Enc. Pl. & Pr. 607; 36 Cyc. 1285.

The conclusion of law that no obligation or duty rested upon defendants to maintain or repair the bridge could not be established and made binding by the stipulation, nor by the judgment entered pursuant to the stipulation, and this judgment does not debar the city from maintaining the present action. The matter of requiring the railway companies to keep the bridge in safe and proper condition for public use cannot be removed from the domain of the police power of the city by such proceedings. Whether the city would be bound by a stipulation as to the physical conditions theretofore existing is not determined as no such stipulation was made.

The claim was made at the argument that, at the time the bridge was built, the Omaha Company owned the land upon which the northerly end of the bridge rested; that as a part of the bridge was not within a public highway but upon the land of the Omaha Company the city was without power to compel the companies to build it; that both the city and the companies acted under and pursuant to the agreement of 1880 in constructing the bridge, and that in consequence of these facts the agreement became valid and binding as between the city and the Omaha Company under the doctrine of State v. Chicago, St. P. M. & O. Ry. Co. 85 Minn. 416, 89 N. W. 1. The record fails to furnish any basis for this contention. The pleadings expressly admit the existence of the street as a public highway and that it had been carried over the tracks of the companies by a bridge for many years. No question was raised either in the pleadings or in the evidence to the effect that a part of the bridge was not within a public highway. Neither is this question raised by any assignment of error. At the trial defendants offered in evidence the judgment roll in the former action, and in con-

nection therewith offered a transcript of the evidence taken in that action, not as original evidence in this action, but for the purpose of showing the questions which they insisted had been determined in the former action. This transcript discloses that evidence was presented in that action to the effect that the northerly end of the bridge rested upon land owned by the Omaha Company at the time the bridge was built. But no such evidence was offered in the present action, and the transcript having been offered merely for the purpose of showing the matters claimed to have been determined by the judgment in the former action, cannot be given effect as evidence tending to prove this fact in the present action. There is not only no evidence in the present case to prove that the Omaha Company ever owned any of the land upon which the bridge rests, but the express admissions in the pleadings precluded defendants from asserting that such was the fact.

We are of opinion that the trial court reached the correct conclusion and the judgment is affirmed.