## CITY OF ST. PAUL v. MINNESOTA TRANSFER RAILWAY COMPANY.[1]

April 20, 1923.

No. 23,299.

**Bridge contract between city and railroad void.**

1. A contract by a city with a railway company to build and forever maintain, at the city's expense, a bridge to cross the tracks of the railway company where no street exists, becomes void and of no effect when a street is there laid out and the company is duly directed by the city to maintain the bridge in order to make the crossing safe.

**Findings sustained.**

2. The findings challenged are sustained by sufficient evidence.

**Duty of railroad to make needed repairs.**

3. When it became the duty of defendant to maintain the bridge in a safe condition, it was obliged to take over the structure in the state in which it then was and make the repairs needed irrespective of the time when the wear and tear took place which necessitated such repairs.

[1]Reported in 193 N. W. 175.

**No estoppel against city recovering cost of repairs.**

    4. The city is not estopped to sue and recover for the repairs defendant wrongfully refused to make.

**Former judgment not a bar.**

    5. A former judgment ·between the parties is *held* not res adjudicata in this action.

Action in the district court for Ramsey county to recover $1,727.17 expended by plaintiff city in repair of a railroad bridge. The case was tried before Sanborn, J., who made findings and ordered judgment for the amount demanded. From an order denying its motion for amended findings or for a new trial and from the judgment, defendant appealed. Affirmed.

    *Richard L. Kennedy*, for appellant.

    *Carlton F. McNally* and *Eugene M. O'Neill*, for respondent.

HOLT, J.

In this action the city of St. Paul recovered nearly $1,800 for repairs to that part of the Raymond avenue bridge spanning defendant's tracks. The defendant appeals from the judgment entered upon findings of fact by the court.

The facts may be shortly stated as follows: The Great Northern Railway, the St. Paul, Minneapolis & Manitoba Railway Company, the Northern Pacific Railway Company, and the defendant, prior to 1898 each owned a right of way with tracks thereon, upon which railway trains were run along the depression now spanned by the bridge in question. No street had then been laid out across the tracks. Defendant's right of way lies between those of two of the other named companies. On April 1, 1898, the city and all the companies entered into a contract, under which the city obtained the right to place piers on the right of way of the railway companies and erect the bridge over these various tracks, in consideration of which the city agreed forever to keep and maintain such a bridge at its own cost and expense. The bridge was erected pursuant to this agreement. When this was done Raymond avenue as then laid out terminated where the right of way of a railway company at either

end of the bridge began. On June 5, 1919, Raymond avenue was duly laid out and established over the right of way of each railway company where the bridge had been built. Up to that time the city had kept the bridge in repair at its own expense. The repairs which thereafter the city was compelled to make, because defendant declined to make the same when ordered by the city, consisted of repairs to the sidewalk of the bridge in December, 1920, and subsequent repairs to the railing, painting and cleaning made in 1921.

The defendant insists that the contract made with reference to the maintenance of this bridge when no street existed over its right of way, taken in connection with the location of the ground, made a binding and enduring agreement, which could not be affected by the police power that came into operation over the locus in quo when the street was established. We are unable to distinguish the facts in this case from the ones present in State v. St. Paul, M. & M. Ry. Co. 98 Minn. 380, 108 N. W. 261, 28 L. R. A. (N. S.) 298, 120 Am. St. 581, 8 Ann. Cas. 1047, and State v. Northern Pac. Ry. Co. 98 Minn. 429, 108 N. W. 269, where the applicable legal principles are fully discussed and settled adversely to defendant's contentions. See also State v. Great Northern Ry. Co. 134 Minn. 249, 158 N. W. 972, and City of St. Paul v. Chicago, St. P. M. & O. Ry. Co. 139 Minn. 322, 166 N. W. 335. State v. Chicago, St. P. M. & O. Ry. Co. 85 Minn. 416, 89 N. W. 1, so strongly relied on by defendant, is not in point, for it there appeared that no street was ever laid out over part of the right of way spanned by the bridge to be repaired. The statement in the opinion that: "The question of the city's rights and powers here involved is entirely different from one that would arise in a case where the public had a priority of right in a street," must be considered as not now the law in view of the decision in State v. St. Paul, M. & M. Ry. Co. 98 Minn. 380, 108 N. W. 261, 28 L. R. A. (N. S.) 298, 120 Am. St. 581, 8 Ann. Cas. 1047, and the subsequent cases above cited.

There is a claim that the bridge was not occasioned by the presence of the railway tracks, but by the contour of the ground it spans, and that the court's finding to the contrary is not sustained by the evidence. We think the record amply supports the conclusion that

but for the tracks a fit grade for use could be made cheaper by a fill than by a bridge. Nor do we think there is any merit in the contention that the comparative cost of a bridge and a fill should have been considered as of the time the contract was made rather than as of any subsequent time. Whichever method adopted would not likely have changed the result.

It is also urged that defendant can be held liable only for such repairs as were necessitated by that wear and tear which took place subsequent to the establishment of the street over its tracks, and, since there is no evidence of what that wear and tear was or how much the cost of the repair thereof would be, there is no support for the amount allowed. When the street was laid out over defendant's right of way and the city duly ordered defendant to assume the burden of maintaining the bridge crossing its tracks, the former contract became void and must be held as if it never existed. Defendant then became bound to take over the maintenance of the bridge in the condition it was. Had there then been no bridge, or had the bridge fallen down from deterioration or want of repair after the street was established, no doubt defendant could have been compelled to erect a new bridge wholly at its own expense, it being needed to make the crossing safe. The lesser ought to be included in the greater. That there was a bridge which, with some repairs, would serve the purpose of the required overhead crossing when it became defendant's duty to maintain it, was defendant's good fortune. The contract with the city, voided when the street was established and the city by ordinance determined it was defendant's duty to repair, cannot now be resorted to as in any manner measuring either the moral or legal duties of the parties relative to the maintenance of a safe crossing over defendant's tracks.

The claim is made that the establishment of the street was a scheme of the city to evade its contract and the city should be held estopped from so doing. There can be no estoppel in evading a contract void as against public policy. But, even if there could be anything to the position taken, it should have been invoked in the proceeding establishing the street. Now it is too late.

That the judgment in defendant's favor, rendered in an action brought in 1897 to compel defendant to erect a bridge over the

tracks where this street has since been laid out, is not res adjudicata under the changed conditions is too clear for argument.

The judgment must be and is affirmed.